**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**

**v.**

**EDGAR HODGE, JR., Appellant**

Criminal No. 14-1968

District Court of the Virgin Islands

Div. of St. Croix

September 27, 1968

ROBERT ELLISON, Assistant Attorney General, *for Government*

JAMES, HODGE & TONKIN (RONALD H. TONKIN, ESQ.), *for appellant*

MARIS, *Circuit Judge*

## OPINION

This is an appeal by Edgar Hodge, Jr., from a judgment entered in the Municipal Court of the Virgin Islands finding him guilty of aggravated assault and battery upon a police officer in violation of section 298(1) of title 14, V.I.C.[1] These are the undisputed facts in the case:

On December 2, 1967 the defendant, while traveling in an automobile, sustained head and chest injuries when the automobile was involved in an accident. The defendant was taken to the Charles Harwood Memorial Hospital where he was admitted for treatment. Without the authority of

---

[1] "§ 298. Aggravated assault and battery
 Whoever commits an assault and battery—
 (1) upon an officer in the lawful discharge of the duties of his office, if it was known or declared to the offender that the person assaulted was an officer discharging an official duty;
. . .
shall be fined not more than \$500 or imprisoned not more than 1 year, or both." 14 V.I.C. § 298.

the hospital officials, the defendant left the hospital without receiving medical treatment. The defendant's father, Edgar Hodge, Sr., was advised by the doctor at the hospital to obtain police assistance in order to bring the defendant back to the hospital for treatment.

The defendant's father went to the police station in Christiansted to obtain police assistance. He and two police officers, Corporal Paulus and Patrolman Ford, went to No. 4 Hospital Street where the defendant was standing. The father attempted to hold the defendant's hand to take him to the hospital when the defendant pushed his father away. At that moment Patrolman Ford attempted to hold the defendant's hand and the defendant pushed Patrolman Ford's arm away, faced off, and then struck Patrolman Ford with his fist. The father then attempted to separate the defendant and Patrolman Ford, at which time the defendant struck Patrolman Ford two times with his fist. The defendant was arrested and a complaint was filed charging him with aggravated assault and battery upon the person of Patrolman Ford by hitting the officer while in the performance of his duty and inflicting a laceration over the right eye and a hematoma on the upper lip, causing the officer to seek medical aid. The defendant appeared for arraignment and entered a plea of not guilty to the charge. At the trial the Government called as witnesses Patrolman Ford and Corporal Paulus who testified substantially to the facts set out above. On cross-examination each witness testified that he knew the defendant prior to December 2, 1967 and that the defendant's behavior at the time of the assault was "different", and that the defendant was in a "frenzy" and "wouldn't listen to nobody."

The defendant called his father as a witness who testified that the defendant was in a stupor at all relevant times and corroborated the testimony of the two police officers as to the physical acts committed by the defendant upon

Patrolman Ford. The defendant also called Mrs. Anita Calderon as a witness who testified that she was at the hospital when he was brought in and that his behavior was abnormal at the time because he respected the witness but on that occasion he did not do so. The defendant testified that he was in a car, not paying any attention to the road, when he heard screeching of brakes, and the next thing he remembered was waking up in a cell at Richmond Penitentiary. He testified that he had no recollection of striking Patrolman Ford.

The attorneys for the Government and the defendant stipulated that if Dr. L. E. Plaskett were called as a witness he would testify that he examined the defendant, who was uncommunicative; that the person who was with the defendant at the hospital answered all the questions; and that he recommended that the defendant be hospitalized for treatment. It was also stipulated that the official hospital records indicated that the defendant received trauma to the head and chest; that he was advised to obtain treatment, which he refused to do, and that he left the hospital without being released by the medical authorities.

Following the close of the testimony, counsel for the defendant argued to the Court that, while no claim was being made that the defendant was temporarily insane, at the time of the occurrence he was not conscious and did not know what he was doing, and therefore, he did not formulate the intent to commit an assault and battery on the officer. The Court rejected this argument and found the defendant guilty as charged and sentenced him to a fine of $50.00. A sentence of imprisonment for a period of one month was also imposed but was suspended and the defendant was placed on probation for a period of one year.

On this appeal the defendant contends that the conviction and sentence must be set aside on the ground that the

trial judge erred in not finding that the defendant was unconscious at the time he committed the offense. It is also contended that the Government failed to establish a prima facie case of aggravated assault and battery against the defendant in that the Government did not prove that it was known or declared to the defendant that the patrolman assaulted was a police officer and the defendant furthermore contends that the police officer was not in the lawful discharge of his duties of office. For the reasons which follow I find all of these contentions wholly lacking in merit.

 The Virgin Islands Code defines an assault and battery as follows:

"Whoever uses any unlawful violence upon the person of another with intent to injure him, whatever be the means or the degree of violence used, commits an assault and battery." 14 V.I.C. § 292.

The term "aggravated assault and battery" is employed to describe an assault which has, in addition to the mere intent to commit it, another object which is also unlawful,[2] in this case the assault and battery upon the police officer. Under the Virgin Islands Code an assault and battery becomes "aggravated" when committed, inter alia, "upon an officer in the lawful discharge of the duties of his office, if it was known or declared to the offender that the person assaulted was an officer discharging an official duty." 14 V.I.C. § 298(1). In order to convict for an aggravated assault and battery, the act must have been committed by the defendant with the intention which gives character to the act and aggravates the assault. The intent in such case is a question of fact for the trier of the facts—the intention is to be inferred from the facts and circumstances surrounding the performance of the act, from the situation of the parties, their acts and declarations, and from the na-

---

[2] 6 C.J.S. Assault and Battery § 73. For a full discussion of the history of assault and battery law see State v. Maier, 1953, 13 N.J. 235, 99 A.2d 21.

ture and extent of the violence, and the object to be accomplished.[3]

■■ In Commonwealth v. Ireland, 1942, 149 Pa. Super. 298, 300, 27 A.2d 746, 747, the court pointed out that "In the ordinary run of assault and battery cases, where the intent of the defendant to inflict the injury complained of is plainly apparent, it is not necessary to lay stress upon it; but in automobile injuries and similar cases it becomes important, for the intention to commit the assault and battery is the very gist of the offense. If one hits another intentionally and knocks him down, that is a plain case of assault and battery; but if one slips on an icy pavement and in the act of falling unintentionally hits another, thereby knocking him down, that is not an assault and battery, for the intent to hit the other person is wholly lacking. Of course, the criminal intent—the intent to injure—may, in proper cases, be inferred from the circumstances, but they must be such as to warrant the inference."

■ When a specific intent is necessary, it need not necessarily be shown by positive evidence but it may be inferred from the circumstances. The principle that a man is presumed to have intended the natural and probable consequences of his act applies.[4] But this is only a presumption which may be rebutted by competent evidence. Thus, it was stated in Murphey v. State, 1894, 43 Neb. 34, 61 N.W. 491, 493, that:

"where the injury proved is the natural and necessary consequence of the deliberate and inexcusable act of the accused, the inference is that it was the result contemplated by him when the assault was committed, and may be sufficient evidence of the specific intent which is essential to a conviction. Such inference or presumption is, however, one of fact merely; and, while the jury may convict without other proof of the intention alleged, there is no

---

[3] Filkins v. People, 1877, 69 N.Y. 101, 102–103, 106; Hallet v. State, 1922, 109 Neb. 311, 190 N.W. 862.

[4] Clark and Marshall, Crimes, 6th ed., §§ 5.03, 10.15.

obligation resting upon them to do so, unless satisfied thereof beyond a reasonable doubt."

The applicable rule is also stated in 22 C.J.S. Criminal Law § 35, as follows:

"The presumption is rebuttable, at least in cases where a specific intent is an element of the crime, and puts the burden on accused to introduce evidence to explain or excuse; . . .

"The presumption is sufficient to establish a prima facie case as to intent and will prevail unless from a consideration of all the evidence the jury entertain a reasonable doubt whether such intention existed. . . ."

■■ All defenses that may be raised in criminal prosecutions generally are, of course, also available in a prosecution for an aggravated assault and battery. As in other criminal prosecutions, the resolution of issues of fact raised by the defense are to be determined by the trier of the facts and the findings on such questions of fact will not be disturbed on appeal if the verdict is sufficiently supported by substantial evidence.[5]

The defendant argues that unconsciousness is a complete defense to a criminal charge, relying in support of his contention on the case of People v. Baker, 1954, 42 Cal.2d 550, 268 P.2d 705. In the Baker case the defendant had been adjudged insane, suffered from epilepsy since he was 15 years old, and suffered a seizure on the day his wife was killed. His defense was that he remembered nothing after, at her suggestion, he rested on the divan until he "awakened" in a hospital three days later. The court said: [268 P.2d 705, 714]

". . . Proof that defendant was afflicted with a permanent insanity, as distinguished from a temporary or transient insanity, prior to the commission of the crime charged will, however, dispel the presumption of sanity and raise a presumption that his insan-

---

[5] Government of the Virgin Islands v. DuBoyce, 3 Cir. 1959, 4 V.I. 107, 267 F.2d 512; Bennett v. United States, 5 Cir. 1960, 285 F.2d 567, 570; Kirkendall v. State, 1950, 152 Neb. 691, 42 N.W.2d 374, 377; 6 Am. Jur. 2d Assault and Battery §§ 59, 107; 6 C.J.S. Assault and Battery § 127(b).

ity continued to exist until the time of the commission of the crime. . . . In the present case, there was ample evidence to establish defendant's insanity prior to the killing of his wife. He had repeatedly been diagnosed as a epileptic with a clouded state and psychosis; he had been adjudicated an insane person and thrice committed to the . . . State Mental Hospital, and he was on parole from that hospital at the time of the crime. He was similarly adjudged insane shortly after the crime was committed."

 I have no quarrel with the Baker case. The rule of law it states is correct. See Davis v. United States, 1895, 160 U.S. 469, 484–488. But I cannot see its applicability to the facts of this case. For when the evidence shows that the defendant acted as though he were conscious, the law presumes that he was. The burden upon the defendant then is to overcome this presumption with sufficient evidence to raise a reasonable doubt in the mind of the trier of the facts. In Government of the Virgin Islands v. Smith, 1960, 4 V.I. 212, 219, 278 F.2d 169, 173, our Court of Appeals stated:

". . . his burden was merely to go forward with the evidence to the extent necessary to raise a doubt, which upon consideration of the entire evidence was a reasonable one, as to the defendant's consciousness and freedom from an epileptic seizure at the time of the accident."

See, also, discussion by the Supreme Court of California in People v. Hardy, 1948, 33 Cal.2d 52, 64–65, 198 P.2d 865, 872, quoted by the Court in the Smith case, 4 V.I. 212, 219–220, 278 F.2d 169, 173, and People v. Nihell, 1904, 144 Cal. 200, 77 P. 916, 917.

 The defendant also relies on Carter v. State of Oklahoma, 1962, Okla. Cr., 376 P.2d 351, in support of his contention. That case is also distinguishable on its facts. In the Carter case the defendant's plea was to the effect that he was not conscious of the act complained of, that it was by reason of a mental blackout, and the defendant sought, in support of his defense, to introduce medical

testimony that he had a history of dizziness, loss of equilibrium, and blackouts as a result of a prior head injury. The trial court sustained an objection to the admission of this evidence. On appeal, the reviewing court held that it was reversible error to exclude such evidence.

In the case at bar the defendant did not offer, in support of his defense of unconsciousness, any medical evidence in respect to the effect of the injury to his head. It is true that defendant testified that he had no recollection of the assault, his father testified that the defendant was in a "stupor" at the time of the assault, but on the other hand the police officers testified that the defendant was in a "frenzy" and "wouldn't listen". The only medical evidence was to the effect that the defendant was advised to obtain treatment which he refused to do and that he left the hospital without being released by the medical authorities. From this evidence the trial judge could infer that the defendant had formed the intent not to be treated for his injury and, since he had refused such treatment at the hospital, he had the same intent when his father and the police officers sought to take him back to the hospital for treatment, and that, accordingly, the defendant intended to injure the officer to prevent his being returned to the hospital for treatment.

The Court of Appeals stated in Government of the Virgin Islands v. DuBoyce, 3 Cir. 1959, 4 V.I. 107, 108, 267 F.2d 512. "The trial judge heard the evidence; he had to make up his mind where the balance of credibility lay. He did so, and his conclusions, supported as they are by adequate testimony are not to be interfered with by us." This rule is applicable in the present case. The finding of the trial judge that the defendant intended to commit the offense charged is supported by substantial evidence and will not be disturbed on review.

I turn now to the defendant's attack on the sufficiency of the complaint. He contends that the Government did not allege and that the Government did not establish by the evidence that it was known or declared to the defendant that the patrolman assaulted was a police officer and that the police officer was acting in the lawful discharge of his duties, within the express terms of section 298(1). The defendant concedes that no timely objection on this ground was raised by motion before trial, as required by Criminal Rule 12(b)(2) [5 V.I.C. App. II, R. 12(b)(2)], nor at any other time during the trial. It is not denied that the two police officers were in uniform at the time of the attack.

I do not agree that the Government failed to establish a prima facie case. The defendant was fully informed of the nature and cause of the accusation against him. Even if the complaint was defective in matter of form, it is of no avail to the defendant now on appeal. Criminal Rule 12(b)(2). Cf. Garza v. United States, 5 Cir. 1947, 159 F.2d 413. The police officers were in uniform. I think that under the facts of this case the trial judge was entitled to presume that the defendant knew that Paulus and Ford were police officers.

It is clearly the purpose of the statute to protect the person of public officers while in the performance of their official duties. But the defendant contends that the police officers were not engaged in performing their official duties and while it was commendable for them to respond to the father's request for aid in taking the defendant back to the hospital, that action was not in the lawful discharge of the injured patrolman's duty as a policeman and therefore the attack was not an aggravated assault and battery within the meaning of the statute.

The answer to this argument is that police officers are the protectors of the public as well as the enforc-

ing agents of the laws established to guide public conduct. It was the officers' duty to do whatever was necessary to keep or restore the peace.[6] The test is whether the officers were acting within that compass or were engaging in a personal frolic of their own.[7] In this case the officers were responding to a request for their aid as officers in an area clearly within their duties.

The Judgment of the Municipal Court will be affirmed.

---

[6] Nestor v. State, 1932, 121 Tex. Cr. 22, 51 S.W.2d 399, 401.
[7] See United States v. Heliczer, 2 Cir. 1967, 373 F.2d 241, 245.