GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff

v.

EDWIN RUSSELL, Defendant

Crim. No. 100-1971

District Court of the Virgin Islands

Division of St. Croix

September 5, 1972

**YOUNG,** *Judge*

### MEMORANDUM OPINION

Appellant was charged with aggravated assault and battery upon a police officer under 14 V.I.C. § 298(1)*. He

---

* This section provides as follows:

"Whoever commits an assault and battery—

"(1) upon an officer in the lawful discharge of the duties of his office, if it was known or declared to the offender that the person assaulted was an officer discharging an official duty;

"....

"shall be fined not more than $500 or imprisoned not more than 1 year or both."

was tried in the Municipal Court before a judge sitting without a jury, found guilty and sentenced to six months imprisonment. He now assigns two errors on appeal. First, he urges that he is entitled to retroactive benefit of our intervening decision in Government v. Osario, (Nov. 8, 1971), which held that defendants who are entitled to a jury trial under Baldwin v. New York, 399 U.S. 66 (1970) (right exists where possible punishment exceeds six months) must be advised of this right by the trial judge before waiver may be presumed. Secondly, Appellant claims that there is insufficient evidence in the record to support a finding on one necessary element of his offense, that the police officer was "discharging an official duty" at the time of the assault. I must disagree with both of these contentions.

This case arose out of an altercation at the Frederiksted police station. As related by the police officer and accepted by the judge, the facts are these. Lt. Charles L. Douglas was at the station's front desk when two men entered and asked for the return of money which they claimed the police had taken from them. Not fully understanding the matter Lt. Douglas proceeded to question them. While he was trying to grasp the import of what they were saying, Appellant entered and loudly declared to the two men: "You have no explanation to give. You have a right to demand your money." Fearing that an unruly situation was in the making, Lt. Douglas ordered Appellant out of the station and later told him several times to leave. At one point, Appellant walked to the door, but then returned and became more vehement than before. To secure obedience Lt. Douglas attempted to guide Russell out by putting a hand on him. A fight ensued; Lt. Douglas found himself on the ground being beaten. Other officers then arrived and Appellant was placed under arrest.

## I.

■ Appellant now claims that the trial judge should have advised him of his right to a jury. This contention might be disposed of as harmless error. Osario sought to prevent unknowing and unintelligent waivers of jury trial by requiring that such waivers be made a matter of record. Here, however, the defense counsel moved for "dismissal" on this basis immediately after the sentence was announced. This promptitude suggests, far more than a mere silent record would do, that the defense was at all times cognizant of its right to a jury trial on demand. See 5 V.I.C. App. V, R. 12. Indeed, the Government contends from this evidence that Appellant deliberately failed to call the court's attention to an error (which was hoped would be grounds for reversal) until after the adverse verdict had been reached and it was too late for corrective steps to be taken. Any retrial would, of course, afford the defendant a second chance at acquittal. This court would be most reluctant to sustain even an otherwise meritorious claim in such circumstances. I need not reach this issue, however, since I hold that Osario is not to be retroactively applied to trials which occurred before the date of that decision.

## II.

Courts have always had difficulty in determining the retroactive effect to be given to constitutional decisions.

On the one hand, even a novel and overruling decision is cast in terms of what the Constitution requires, and, since the document remains the same, this is presumably what was always required. Thus complete retroactivity would appear both appropriate and just. On the other hand, however, there are practical constraints to this course. It must be acknowledged that courts do make new law, and so police and lower court reliance on the earlier interpretation is often justifiable.

If the legitimacy of this reliance is not recognized it will be necessary to retry many prior convictions under the new standards, even if the old criteria leaves no fair doubt as to the defendant's guilt. This could cause substantial disruption of the criminal justice system as well as entailing risks that witnesses will have departed or their memories become faded. For these reasons commentators searched for rationales under which cases could be limited to prospective application, see, e.g., Note, Prospective Overruling and Retroactive Application in the Federal Courts, 79 Yale L. J. 907 (1962). The Supreme Court explicitly accepted the principle of prospectivity in Linkletter v. Walker, 381 U.S. 618 (1965), noted in Mishkin, The Supreme Court 1964 Term—Foreword: The High Court, The Great Writ, and The Due Process of Time and Law, 79 Harv. L. Rev. 56 (1965). The court there established three criteria for determining when prospective application would be appropriate: (a) the purpose to be served by the new standards—specifically, do they improve the validity of the fact finding process at trial or do they serve only extrinsic social goals; (b) the extent of reliance by law enforcement authorities on the old standards; and (c) the effect on the administration of justice of a retroactive application of the new standards. See also Stoval v. Denno, 388 U.S. 293 (1967).

The threshold question is whether Osario established new constitutional law in this jurisdiction. If prior decisions of higher courts required trial courts to advise those accused of non-petty misdemeanors of their jury trial right, then this court cannot limit those decisions by making them effective only from the date that they were first explicitly followed here. However, I believe that the principles enunciated in Osario were novel. It is true that the decision drew its inspiration from Johnson v. Zerbst, 304 U.S. 458 (1937), which held that a court must assure it-

self that a waiver of counsel was knowingly made. However, Zerbst is distinguishable and hence Osario represents an extension of it. A defendant without counsel might not make any decision intelligently, including whether or not to demand a lawyer; but once counsel is present, as it was here, the risk of improvident waivers is greatly reduced. Thus, a requirement that the court satisfy itself on the validity of subsequent transactions does not follow automatically from Zerbst. Boykin v. Alabama, 395 U.S. 238 (1969) was also influential to the decision but is also distinguishable. Boykin held that the record should show a defendant's plea of guilty to be "intelligent and voluntary." But this dealt with a far more determinative decision in the proceedings, and one in which the pressures of plea bargaining may make it more likely that the defendant is laboring under a misapprehension of certain lieniency.

Osario therefore represents a logical extension of these cases and is properly subject to the criteria governing the retroactivity of new decisions. Some types of decisions have automatically been made retroactive, including most notably those designed to assure the validity of fact-finding at trial. The theory is evidently that since the conviction of innocent persons has always been so repugnant in our jurisprudence, the Constitution must be understood as having always prohibited procedures which are now recognized as creating the risk of that result. For cases making prior decisions retroactive, see, e.g., Arsenault v. Massachusetts, 393 U.S. 5 (1968) (counsel required at arraignment to assure that pleas are entered intelligently); McConnell v. Rhay, 393 U.S. 2 (1968) (counsel required at deferred sentencing hearing upon parole revocation); Berger v. California, 393 U.S. 314 (1969) (absence of witness from jurisdiction will not justify the use at trial of preliminary hearing testimony unless the State had

149

made a good-faith effort to secure his presence); Roberts v. Russell, 392 U.S. 293 (1968) (co-defendant's extralegal confession may not be admitted at joint trial if he is unavailable for cross-examination). At least one case gave retroactive effect to a decision that the Government was constitutionally precluded from punishing certain conduct. See United States v. United States Coin and Currency, 401 U.S. 715 (1971) (failure to pay gambling tax protected under fifth amendment). This was evidently based on the reasoning that if retroactivity is demanded by doubtful trial integrity, it is surely demanded in circumstances where there never should have been a trial at all.

On the other hand, new constitutional decisions can also serve procedural goals designed to safeguard the dignity of the individual. While these goals are important to society they are not generally determinative of the justice of a decision in a particular cause, and so are not considered to justify the procedural difficulties of retroactive application. For example, Linkletter v. Walker, 381 U.S. 618 (1965) denied retroactive effect to the exclusionary rule of Mapp v. Ohio, 367 U.S. 643 (1961); Williams v. United States, 401 U.S. 646 (1971) similarly limited Chimel v. California restrictions on search incident to arrest, 395 U.S. 752. Both the original decisions sought to deter illegal police conduct for the security of citizens in general, but the new rules did not call into question the probative value of evidence which had been seized under the prior standards. Indeed, under this rationale, some decisions have been denied retroactive effect even where one of their subsidiary purposes was to enhance the validity of fact-finding. See, e.g., Tehan v. United States, 382 U.S. 406 (1966), giving only prospective enforcement to Griffin v. California, 380 U.S. 609 (1965) (prosecutor may not comment on defendant's failure to take the stand), on the grounds that the privilege against self-incrimination is not primarily "an adjunct to

150

the ascertainment of truth." 382 U.S. at 416. For similar reasons Johnson v. New Jersey, 384 U.S. 719 (1966) denied retroactive effect to Escobedo v. Illinois, 378 U.S. 478 (1964) and Miranda v. Arizona, 384 U.S. 436 (1966), although it acknowledged that the fifth amendment did sometimes serve to protect against unreliable confessions. Primarily, however, it upholds our social value of not convicting an individual "out of his own mouth"—a value independent of the fact that convictions so procured generally have a firm factual basis. Moreover, in these cases there had been widespread police reliance upon the prior rule, and if retroactivity were granted it would entail retrial of a very large number of cases.

I believe that the instant case falls into this latter category. Jury trial is admittedly an ancient and valued right, and the favored method of fact-finding in serious cases, see, Duncan v. Louisiana, 391 U.S. 149 (1968). Nonetheless, it seems primarily intended to preclude arbitrariness or oppression by the exceptional judge, rather than questioning the validity of bench trials in general. Thus Duncan itself was denied retroactive effect in DeStephano v. Woods, 392 U.S. 631 (1968), where the court noted that "[i]t cannot be said that trials before judges alone are unfair or that a defendant may never be as fairly treated by a judge as he would by a jury." Id. at 633. For this reason I hold that the less crucial right to *advisement* of a jury trial is equally removed from the fact-finding validity of the trial itself, and Osario will therefore not be retroactively applied.

### III.

The Appellant has urged that a different result is justified by the fact that his case has reached this court on direct appeal rather than by collateral attack. This point is not without some persuasive value. A person whose

conviction is not yet final would be entitled to enter the appellate court in any event, and so review under the new standards would not necessarily entail increased litigation. Moreover, the appellant could claim that he is not asserting a right to full retroactivity but rather to application of the law already in existence at the time his appeal came up, and that such application of existing law is an inseparable part of the judicial as opposed to the legislative function. See Mackey v. United States, 401 U.S. 667, 675 (1971) Harlan, J., concurring and dissenting). Perhaps for these reasons, most of the early cases establishing non-retroactivity did so in the context of collateral attacks through habeas corpus petitions. Even in these cases, however, there were suggestions that the proposed distinction would not be recognized. See, e.g., DeStefano v. Woods, 392 U.S. 631 (1968) cf. Johnson v. New Jersey, 384 U.S. 719, 732 (1966). The Supreme Court then fully considered this issue in Williams v. United States, 401 U.S. 646 (1971), and held that retroactivity would be equally applicable to cases on direct and collateral review. The Court believed, for the reasons set forth earlier in this opinion, that where merely prophylactic changes have been made a defendant's trial is properly reviewed under the standards which were controlling at the time it was held. To hold otherwise in this case would burden the Municipal Courts with a new trial, unjustified by the raising of any substantial question as to the defendant's guilt.

## IV.

▆▆ Appellant has also urged that the record will not support a finding that Lt. Douglas was engaged in an "official duty" at the time, and thus, the element of aggravation being absent, the maximum charge maintainable should be one for simple assault and battery. He contends that Douglas precipitated the struggle, pushing Appellant

sharply and unnecessarily towards the station door, and by this improper conduct was stripped of his status as an acting police officer for purposes of § 298(1). In these circumstances, Appellant further urges, any citizen has a right to offer lawful resistance. I cannot agree with these arguments. In the first place, it may be that a police officer is within the protection of this statute even if his conduct is unauthorized by law. It would hardly be conducive to orderly society if every breach of complicated constitutional rights authorized an individual to rely on self-help. There are other means for ascertaining what those rights are and seeking redress. On the other side of this coin, an officer is liable as acting "under color of law" for purposes of the Civil Rights Act even if his actions are technically outside of his statutory authority. See Monroe v. Pape, 365 U.S. 167. In either case, citizens are expected to assume that an officer has a lawful claim on their obedience and that remedies are available to match that assumption. As this court has said:

"The test to determine whether officers are within the protection [of § 298(1)] is whether they were acting within the compass of their duties or were engaged in a personal frolic of their own." Government v. Hodge, 7 V.I. 73, 84 (1968).

█ However, we need not reach this issue, since the record will support a conclusion that Lt. Douglas was acting within the letter of the law. Douglas testified that Appellant's manner was threatening and that a breach of the peace appeared imminent, and that he therefore ordered Appellant from the station without initiating the violence in so doing. The trial judge, who had an opportunity to observe the witnesses, elected to believe his testimony. He noted, "I'm satisfied that how Mr. Russell acted here was not in self-defense" (T. 90). Where a finding of fact is thus supported by competent evidence, as it is here, it will not be disturbed on appeal. See Government v. Pigott,

153

7 V.I. 587; Government v. DuBoyce, 4 V.I. 107, 267 F.2d 512.

The judgment of the Municipal Court will therefore be affirmed.