**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

v.

**ETIENNE FRETT, Defendant**

Crim. No. 123-77

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

January 30, 1978

316

318

MONICA BOYD, ESQ., Deputy Assistant Attorney General (Department of Law), St. Thomas, V.I., *for plaintiff*

ARNOLD M. SELKE, ESQ., St. Thomas, V.I., *for defendant*

FEUERZEIG, *Judge*

### MEMORANDUM OPINION

The ongoing debate as to the propriety and extent to which corporal punishment may be used in Virgin Islands' public schools will be perpetuated by this case, which requires the court to determine whether a teacher is criminally liable for having struck a student in the face three times with a clenched fist.[1] The defendant, Etienne Frett, a carpentry teacher at Charlotte Amalie High School, is charged with aggravated assault and battery in violation of 14 V.I.C. § 298(5). It is undisputed that Mr.

---

[1] The United States Supreme Court, in holding that corporal punishment is not prohibited by the Eighth Amendment's ban on cruel and unusual punishment, had occasion recently to review the historical background of this age-old issue.

The use of corporal punishment in this country as a means of disciplining schoolchildren dates back to the colonial period. It has survived the transformation of primary and secondary education from the colonials' reliance on optional private arrangements to our present system of compulsory education and dependence on public schools. Despite the general abandonment of corporal punishment as a means of punishing criminal offenders, the practice continues to play a role in the public education of schoolchildren in most parts of the country. Professional and public opinion is sharply divided on the practice and has been for more than a century. Yet we can discern no trend toward its elimination.

At common law a single principle has governed the use of corporal punishment since before the American Revolution; teachers may impose reasonable but not excessive force to discipline a child. . . . Ingraham v. Wright, 430 U.S. 651, 660–61, 97 S.Ct. 1401, 1406–07 (1977) (footnotes omitted).

Corporal punishment is permitted in the Virgin Islands. 14 V.I.C. § 293(1); 17 V.I.C. § 87 and § 130. See e.g. Estien v. Christian, Civil No. 216/1973 (D.V.I., Div. St. Croix, Memorandum June 28, 1974).

Frett struck Dimitri Baptiste while Mr. Baptiste was a student in Mr. Frett's carpentry class.

Contrary to the customary practice in this jurisdiction and elsewhere, the court will first consider the legal issues presented by this case and then proceed to an analysis of the facts in light of the law as explicated. This reversal is necessary to present the material facts in proper perspective.

I

The inquiry begins with 14 V.I.C. § 298. That section in pertinent part provides:

§ *298. Aggravated assault and battery*
Whoever commits an assault and battery—
. . . .
(5) being an adult male, upon the person of a female or child, . . .
. . . .
shall be fined not more than $500 or imprisoned not more than one (1) year or both.

Section 298 is predicated on an initial finding that the defendant did in fact commit a simple assault and battery,[2] but it is coupled with an element of aggravation that also is unlawful, in this instance the assault by an adult male upon a child.[3] See Government of the Virgin Islands v. Hodge, 7 V.I. 73, 79 (D.V.I. 1968).

■ Thus, the court first must turn to the definition of a simple assault and battery, which is found in 14 V.I.C. § 292.

Whoever uses any unlawful violence upon the person of another with intent to injure him, whatever be the means, or the degree of violence used, commits an assault and battery.

---

[2] This is in contrast to sections 295, 296, and 297, which create different categories of assault crimes, i.e., assault in the first, second and third degrees, which have more than a simple assault at their root.

[3] It is conceded that Mr. Frett is an adult male and that Mr. Baptiste is a child within the meaning of subsection 5 of § 298.

Consequently, to sustain a conviction, the statute requires proof of three independent elements:

1. That violence is perpetrated by the defendant upon the person of another;
2. That said violence is unlawful; and
3. That said violence is accompanied by an intent to injure. The first two factors constitute the actus reus, or the guilty act or deed of the crime, while the last factor encompasses the mens rea, which is the mental state or intent to do the guilty act.

■ In considering the legal issues, the court is mindful of the well-established proposition that in criminal prosecutions the defendant is entitled to the presumption of innocence. This is said to be a "fundamental principle of the common law," as well as a requirement of the due process clause of the Fifth Amendment to the United States Constitution and Section 3 of the Revised Organic Act of 1954 (prec. 1 V.I.C.), 48 U.S.C. § 1561. Government of the Virgin Islands v. Torres, 3 V.I. 333, 336, 338–39, 161 F.Supp. 699, 700–701 (D.V.I. 1958) and citations therein; accord State v. Lutz, 65 Ohio L. Abs. 402, 113 N.E.2d 757, 761 (C.P. Ohio 1953). The burden is thus on the government to rebut this presumption and to convince the trier of fact by the evidence offered and the reasonable inferences that may be drawn therefrom of the presence of each element of the crime beyond a reasonable doubt. Proof of one fact may permit an inference of the existence of another fact without denial of due process of law, but only if there is a rational connection between the fact proved and the inferences sought to be drawn from such fact. Government v. Torres, supra, 3 V.I. at 337–39, 161 F.Supp. at 700–701.

### ACTS OF VIOLENCE

It is undisputed that the first element, that of violence, is

present in the instant case and that the violence was perpetrated by the defendant, Etienne Frett, by punching Mr. Baptiste three times in the face. The defendant, however, disputes that such violence was unlawful, and, in any case, he asserts that his actions were not motivated by an intent to injure. Defendant, in support of this position, relies on 17 V.I.C. § 87, 14 V.I.C. § 293(a)(1), (2) and (6), and various sections of the Restatement (Second) of Torts. The court will consider each of these sections seriatim.

## LAWFULNESS OF VIOLENCE

■ Section 87 of Title 17[4] gives teachers the right to exercise the "same authority" over pupils while they are in school that their parents have. Section 293(a)(1) of Title 14[5] provides that "violence" used on a child by a parent in

---

[4] § 87. *Punishment of pupils by school authorities*

All principals and teachers in the public schools in the Virgin Islands shall have the right to exercise the same authority, as to conduct and behavior, over pupils attending their schools during the time they are in attendance, including the time required in going to and from their homes, as parents, guardians, or persons in parental relation to such pupils. See also, 17 V.I.C. § 130.

[5] § 293. *Lawful violence, what constitutes*

(a) Violence used to the person does not amount to an assault or an assault and battery—

(1) in the exercise of the right of moderate restraint or correction given by the law to the parents over the child, the guardian over the ward, the master over his apprentice or minor servant, whenever the former be authorized by the parent or guardian of the latter so to do;

(2) for the preservation of order in a meeting for religious or other lawful purposes, in case of obstinate resistance to the person charged with the preservation of order;

(3) the preservation of peace, or to prevent the commission of offenses;

(4) in preventing or interrupting an intrusion upon the lawful possession of property, against the will of the owner or person in charge thereof;

(5) in making a lawful arrest and detaining the party arrested, in obedience to the lawful orders of a magistrate or court, and in overcoming resistance to such lawful order; or

(6) in self defense or in defense of another against unlawful violence offered to his person or property.

(b) In all cases mentioned in subsection (a) of this section where violence is permitted to effect a lawful purpose, only that degree of force must be used which is necessary to effect such purpose.

the exercise of "moderate restraint or correction" does not amount to an assault and battery. The section heading of § 293 is entitled "lawful violence, what constitutes," and it is clear that violence on a child is lawful when committed in the exercise of "moderate restraint or correction."[6] Reading 14 V.I.C. § 293(a) in conjunction with 17 V.I.C. § 87, it is clear that the Legislature has conferred on teachers the privilege to use lawful violence on a pupil in the same manner and to the same extent that the privilege has been conferred on parents. These two sections of the law, however, are tempered by subsection (b) of § 293, which specifically limits the amount of violence that may be used to "only that degree of force which is necessary" to effect "a lawful purpose." It is clear that this limitation also must be applied to paragraphs (2) and (6) of subsection (a). Therefore, application of more force than is "necessary" is, by definition, unlawful within the meaning of the simple assault and battery statute, 14 V.I.C. § 292. Otherwise stated, excessive force on a child is "unlawful violence" within the meaning of § 292 and, if the other elements are present, such force constitutes an assault and battery.[7]

 Whether the force used on a child is excessive is a question of fact and depends upon the circumstances of each case.

The most important considerations are the seriousness of the offense, the attitude and past behavior of the child, the nature and severity of the punishment, the age and strength of the child and

---

[6] Section headings are not, strictly speaking, a part of the law, 1 V.I.C. § 45(a)(2), but if consistent with the purpose and intent of the Legislature they may be looked to for guidance in determining the legislative intent. 2A Sutherland, Statutory Construction § 47.14 (4th ed. 1973)

[7] Virgin Islands law thus reflects the general rule.

The prevalent rule in this country today privileges such force as a teacher or administrator "reasonably believes to be necessary for [the child's] proper control, training or education." Restatement (Second) of Torts § 147(2); see id. § 153(2). To the extent that the force is excessive or unreasonable the educator in virtually all States is subject to possible civil and criminal liability.

Ingraham v. Wright, 430 U.S. at 661, 97 S.Ct. at 1407.

the availability of less severe but equally effective means of discipline. I. F. Harper & F. James, The Law of Torts, at 290–291; Restatement (Second) of Torts § 150 Comments c–e.

Ingraham v. Wright, 430 U.S. at 661, 97 S.Ct. at 1408. However, in determining whether the force used was excessive or whether the restraint or correction used was "immoderate," the court finds itself without statutory guidance in the context of a criminal prosecution. The court believes that a standard of reasonableness, identical to that employed by traditional tort doctrine, is appropriate and the one which will best effectuate the legislative intent of 14 V.I.C. §§ 292 and 293. See, e.g., People v. Ball, 58 Ill.2d 36, 317 N.E.2d 54 (1974). Accordingly, in determining whether violance was unlawful within the meaning of 14 V.I.C. § 292, the court will be guided by those sections of the Restatement (Second) of Torts which deal with a teacher's privilege to discipline his pupils. Restatement, supra, § 147 et seq. In being so guided, the court remains mindful of the greater burden of proof that the government must carry than, of course, would prevail in a tort action. See People ex rel. Hogan v. Newton, 184 Misc. 405, 56 N.Y.S.2d 779, 782 (White Plains City Court 1945).

### INTENT TO INJURE

■■ The third and final element of the crime is the intent of the actor. Ordinarily intent is a question of fact. Government v. Hodge, 7 V.I. at 79. It may be inferred from the facts and circumstances surrounding the act, the situation of the parties, the nature and extent of the violence, the acts and declarations of the parties at the time, and the objects to be accomplished. Id. at 79–80; City of Macomb v. Gould, 184 Ill.App.2d 301, 244 N.E.2d 634, 635 (1969). In case of extreme circumstances, where the force applied is clearly excessive or "so cruel as to be shocking to every right thinking man," an intent to injure will be

inferred as a matter of law e.g. State v. Lutz, 113 N.E.2d at 760.

## II

Against this backdrop, the court proceeds to an analysis of the pertinent facts, most of which are not in dispute. Mr. Frett is 29 years old, weighs 150 pounds and is 5 feet 8 inches tall. Mr. Baptiste is 15 years old, is 5 feet 7 inches and weighs 130 pounds. The incident between the two occurred on the morning of May 25, 1977, between 8:30 and 9:30 a.m. The defendant, Mr. Frett, had instructed his class to review the term's work for an upcoming examination. Mr. Baptiste disregarded that instruction and began doing homework for another class. When Mr. Frett realized that his instructions were being ignored, he walked over to Baptiste, took the papers away, tore them up and threw them out. Sometime later Mr. Frett was notified that his wife was waiting outside the classroom, so he left to meet her. He was gone for about 10 or 15 minutes. Mr. Baptiste again disobeyed Mr. Frett's instructions by doing homework for another class. Other students were disobedient as well, some eating mangoes, others talking, and still others milling about. When Mr. Frett returned to the room he set about restoring order to the class by individually requesting or demanding that each student return to his seat and resume the assigned work. When he realized that Mr. Baptiste was again doing homework for another class, he again took the papers, tore them up and threw them away. Mr. Frett testified that he did not do this in anger, but to get Mr. Baptiste to begin reviewing his work and to restore order to the class. The court credits Mr. Frett's testimony despite the best efforts of the prosecution to impeach him and to show that he acted in anger and frustration because of an argument with his wife. Not one of the witnesses supported the government's theory, and it

is accordingly discounted. Mr. Baptiste testified he did nothing to Mr. Frett in response. One witness corroborated this. Mr. Frett testified that Mr. Baptiste, while remaining seated, placed a hand on his (Frett's) midsection and pushed. This occurred almost simultaneously with Mr. Frett's grabbing of Mr. Baptiste's papers. Several students corroborated this version of the events and the court believes it to be so. In either case, the undisputed testimony is that Mr. Frett struck Mr. Baptiste in the face with a clenched fist. According to Mr. Baptiste, he then placed his hands in front of his face to ward off more blows. Mr. Frett claimed that Mr. Baptiste again pushed him in the same manner. The court finds this testimony to be more inherently probable as well as more fully corroborated. Both agree that Mr. Frett struck Mr. Baptiste a second time in the face with his fist. There was testimony that this sequence of push and punch occurred yet a third time, although this also was disputed. The court believes that it did occur and the defendant has admitted it. During all of this time Mr. Baptiste remained seated in his chair with Mr. Frett standing over him to one side, blocking his exit. After the final blow Mr. Baptiste got up from his seat and left the classroom.

Medical evidence was presented by the prosecution through the testimony of Dr. Didace S. Monsanto. He testified that he saw Mr. Baptiste on the afternoon of the 25th, and that the patient complained of pain. He testified that he observed a laceration inside the mouth and an abrasion of the gingiva[3] but that there was no dislocation of the jaw. Dr. Monsanto treated the patient again on the 31st of May and observed some swelling of the jaw, but there were no additional indicia of the blows. Subsequent treatments revealed that Mr. Baptiste was suffering from a

---

[3] Commonly known as the gums.

herpes virus, an unrelated infection, but that there were no permanent or lasting injuries associated with the blows.

## III

■ Although the court does not condone violence or excessive chastisement, the court cannot find that the first blow delivered to Mr. Baptiste's face was unreasonable beyond a reasonable doubt. Mr. Frett may well have believed that such a firm and swift response to Mr. Baptiste's disobedience, his refusal to begin work, and the push that he effected against him was his only, or at least the best, alternative to enforce his commands, restore discipline to the classroom and get on with the business of learning. Such a belief, although not concurred in by the court, may well have been a reasonably spontaneous reaction under the circumstances as they existed. Restatement (Second) of Torts §§ 147(2), 152 and 154 (1965). At least the court is not prepared to find beyond a reasonable doubt that such a belief was unreasonable. Nor will the court, as to the first blow, infer an intent to injure. In People ex rel. Ebert v. Baldini, 4 Misc.2d 913, 159 N.Y.S.2d 802 (Mt. Vernon City Ct. 1957), a teacher struck a pupil in the face causing an abrasion to the right nostril and what is commonly referred to as a "bloody nose." The New York statute under consideration, quoted by the court in its decision and reproduced in part below,[9] is materially similar to 14 V.I.C. § 293 and 17 V.I.C. § 87. The court, after giving long and serious consideration to the decision," concluded that "there was no malice on the

---

[9] The statute as quoted by the court, 159 N.Y.S.2d at 809, provided:

To use or attempt, or offer to use, force or violence upon or towards the person of another is not unlawful in the following cases:

* * *

4. When committed by a parent or the authorized agent of any parent, or by any guardian, master, or teacher, in the exercise of a lawful authority to restrain or correct his child, ward, apprentice or scholar, and the force or violence used is reasonable in manner and moderate in degree.

part of the defendant in punishing the complainant." 159 N.Y.S.2d at 806. While the court made clear its disapproval of "excessive chastisement," it found that under the circumstances it could not hold defendant's conduct unreasonable beyond a reasonable doubt and addressed itself to the public policy considerations of its holding:

It is the thought of the court that the teacher must be supreme in his classroom, like any other person placed in authority, he must use the authority vested in him rightly, and never excessively. The court feels that the legislature has cloaked the teacher with authority so that he may maintain the authority decorum necessary for the proper conduct of the classroom. Instruction can only be properly and successfully given by one who has the authority over his pupils and who has their respect. The teacher is vested with the right to give orders and as a concomitant of the same he should have sanctions to enforce them. 159 N.Y.S.2d at 806–807.

The court notes that the reported decisions generally are in agreement with the above-expressed philosophy. However, an Illinois appellate court posed the following rhetorical question: "Is a teacher ever justified in striking the face of a pupil with the fist?" City of Macomb v. Gould, 104 Ill.App.2d 361, 244 N.E.2d 634, 635 (1969). The court does not believe, however, that it need adopt a per se rule as suggested by the Illinois court. Such an approach promotes inflexibility and prevents consideration of extreme or aggravating circumstances. This court believes each case must be decided on its facts.

## IV

▮ The above reasoning notwithstanding, the court is much more troubled by the succeeding blows. They stand in a different category. After the initial sequence of push and punch, Mr. Baptiste again pushed his teacher and Mr. Frett again struck back. Mr. Frett's response may well have been motivated by pain, fear, anger, frustration or a combina-

tion of all four, and his intent may have been either disciplinary or retaliatory. In any case, the incident that had evolved transcended the initial problem of Mr. Baptiste's refusal to do his work. In layman's language, after the second push, the situation "had gotten out of hand." Mr. Frett had an obligation to recognize this and to take appropriate measures. While the court disclaims an intention to write a code of procedure for teachers dealing with recalcitrant students, numerous suggestions, born of common sense, come to mind. Mr. Frett could have desisted altogether from the dispute. He could have sat down and talked to the boy. He could have kept him after class for such purposes. He could have ordered him from the class. He could have sent him to the principal's office. He could have called his parents. Undoubtedly, other suggestions could be made. In any case, the court finds that Mr. Frett's conduct was unacceptable and unreasonable, even if Mr. Frett believed it to be reasonable. Although the defendant had a right to administer corporal punishment, this was more than mere chastisement. It was in fact a beating. People v. Ball, 55 Ill.2d 36, 317 N.E.2d 54, 56 (1974). In this day and age it is unseemly and contrary to common expectations for a teacher to batter his student by raining blows on his head. It sets a bad example and, in the long run, is counter-productive.

The court is also mindful of the fact that sometimes reward and good example and personal interest are much more efficacious than stern and harsh punishment.

People ex rel. Ebert v. Baldini, 159 N.Y.S.2d at 806. The court thus concludes that on the date in question the defendant's conduct in striking his student two times with a clenched fist, after the initial push-punch sequence, was unreasonable beyond a reasonable doubt.

This being a criminal action, before a conviction can be entered, the court also must find the requisite mens rea on the part of the defendant or, in the words of the statute, an "intent to injure." As noted, the defendant's intention may be inferred from the facts, but due process compels proof beyond a reasonable doubt. Although generally this is a high standard of proof for the prosecution to meet, in the instant case defendant's own testimony convicts him. Mr. Frett testified that he struck his student not out of anger, but in self-defense and also to keep discipline in the class and to maintain his self-respect. Defendant at trial sought to bolster the credibility of his claim of self-defense by introducing testimony that he had been in a car accident about a year before and had had an operation in the exact spot of his body where he was pushed. It is clear that this defense is unavailing. Title 14 V.I.C. § 41(2) provides in relevant part that:

Any person *about to be* injured may make resistance sufficient to prevent—

. . .

(2) an offense against his person . . . (emphasis added).

See also Restatement (Second) of Torts § 63, Comment g (1965). The actor may not seek out the aggressor to inflict injury upon him after the first injury has been inflicted. In addition, the force used to deflect the aggressor's threatened harm must be reasonable and necessary. An application of a greater force than is necessary is unlawful.

The right of self-defense does not extend to the infliction of more harm than is necessary for the purpose of defense.

14 V.I.C. § 43; see also 14 V.I.C. § 293(a)(6)(b), supra, note 5; Restatement (Second) of Torts § 63, Comment j.

Here the court already has determined that the second and third blows were unreasonable. In addition, it is clear that each blow Mr. Frett struck was in response to a prior

330

push. No evidence was presented to the effect that Mr. Baptiste was preparing for a follow-up attack after any of the pushes, nor that Mr. Frett was attempting to deflect any of these pushes. Indeed, the former supposition would be ludicrous in light of the fact that the student remained seated throughout the altercation while Mr. Frett stood above him and to one side. Under such circumstances it is clear that Mr. Frett had it in his sole power to withdraw or attack as he pleased, and may not rely on his claim of self-defense.

It also is equally clear that the defendant may not rely on his assertion that he sought to enforce order and discipline in the classroom and to maintain his self-respect as a teacher. Nor can the court credit Mr. Frett's testimony that he did not act in anger. The defendant's conduct deviated so vastly from the norm that the court must find that the defendant was in fact angry and that in anger his overriding motivation in inflicting the blows on his pupil was retaliation. This is an impermissible motive. The laws of virtually every state forbid the excessive punishment of schoolchildren. The laws of the Virgin Islands give privilege only to those who act in the exercise of "moderate restraint" or "correction." 14 V.I.C. § 293(1). The blows inflicted were so disproportionate to the "crime" committed[10] that not only were they factually unreasonable

---

[10] There is no question that in early years far greater punishments were inflicted on children without teachers or administrators incurring criminal liability. See generally Annot., 89 A.L.R.2d 396 (1963). No citation to authority is necessary to demonstrate the expansion of an individual's rights under the due process clause of the U.S. Constitution. This court believes that as constitutional rights change with our concept of ordered liberty so too must the conduct of individuals evolve. One example of evolving teacher disciplinary standards is revealed by a regulation promulgated pursuant to a Pennsylvania statute similar to 17 V.I.C. § 87. The regulation provided

In administering corporal punishment, the teacher and principal must not use any instrument which will produce physical injury to the child and no part of the body above the waist nor below the knees may be struck. (Quoted in Glaser v. Marietta, 351 F.Supp. 555, 556–57 (D.Pa. 1972)); but cf. Stephens v. State, 44 Tex. Crim. 67 (1902) noted in Anno., 89 A.L.R.2d 396, 499 (1963) (where the defendant teacher's conviction was reversed although he had whipped the pupil with two mesquite switches twenty

and unnecessary, but, as a matter of law, they also were without privilege.

Public school teachers and administrators are privileged at common law to inflict only such corporal punishment as is reasonably necessary for the proper education and discipline of the child; any punishment going beyond the privilege may result in both civil and criminal liability.

Ingraham v. Wright, 430 U.S. at 670, 97 S.Ct. at 1412; accord People v. Decaro, 17 Ill.App.3d 553, 308 N.E.2d 196 (1974); City of Macomb v. Gould, 104 Ill.App.2d 361, 244 N.E.2d 634 (1969).

 In circumstances as these an inference of criminal intent to injure arises. The defendant failed totally to rebut that inference. No special or aggravating circumstances were shown; no mitigating factors were revealed. The evidence presented shows only that because of a student's failure to do his assignment and in response to a push, the defendant initiated a confrontation in which he succeeded in striking three blows to the face of his seated pupil. The court thus finds beyond a reasonable doubt that with respect to the second and third blows, there was an assault and battery by the defendant upon the person of another, attended by circumstances of aggravation, to wit, an assault by an adult male upon a child.

In closing, one additional word needs to be said. This court, consistent with the laws of the Virgin Islands, fully recognizes the desirability and indeed the absolute necessity of teachers being permitted to maintain discipline in the public schools. This includes the right to inflict reasonable corporal punishment on students. The legislature has recognized the need for such discipline and has extended to teachers the privilege accorded parents. 17 V.I.C. § 87 and

---

seven times across the legs and afterwards six times across the shoulders breaking one of the switches in the process and leaving the pupil striped and bruised.

14 V.I.C. § 293. Consequently, this decision is not to be construed as foreclosing teachers of Virgin Islands' public schools from using corporal punishment on their students in the process of enforcing discipline. Such punishment, however, must be necessary under the circumstances and must be motivated by an intent to correct or restrain the student. In determining what is necessary, teachers must be given broad discretion and a wide latitude of available correctional measures. However, teachers and administrators, no less than the courts, must be vigilant in seeing that the measures adopted are reasonable and that they are for the necessary correction or restraint of their students.