402

**STATE, Plaintiff, v. LUTZ, Defendant.**

Common Pleas Court, Stark County.

No. 93901.    Decided June 11, 1953.

Martin Hunker, Louis Martinez, Canton, for plaintiff-appellee.

Richard McCuskey and Loren Souers, Jr., Canton, for defendant-appellant.

## OPINION

By McLAUGHLIN, J.

### STATEMENT OF FACTS

Defendant, Mervin R. Lutz, Canton Grade School Principal and Teacher, appeals an assault and battery conviction for paddling a pupil. He with good reas⸝ believed the pupil, eleven year old Samuel Kafidies, had thrown a stone while on the way to school at a little girl schoolmate, and then fibbed about it. The stone knocked the little girl's glasses off and might have seriously injured her eyes. The paddle used was of normal proportions. He was severely spanked from six to fifteen times. His buttocks was vividly discolored, black

and blue, which cleared up in about five days with some tenderness remaining longer. He was an epileptic since infancy, and this Court accepts his mother's story to the effect that he had three such fits after the paddling. The spanking was witnessed by Miss Evelyn Obermiller, his room teacher, on Thursday morning, October 23rd, 1952. The next day, Friday, the boy's parents and older brother took him to the office of Superintendent of Schools, Harold E. Eibling, who saw the bruises, listened to their complaint, but took no action. They then took him to the County Juvenile Court and had a talk with the Boy's Probation Officer there, Andrew Chlebeck, who took no action. They then went to Police Court and filed an affidavit. On the following Tuesday the boy returned to school and was then examined by the school doctor and the school nurse. By this time the discoloring was entirely gone

Almost two months later on December 17th, 1952, the case was tried to the Municipal Judge without a jury. The trial lasted about three days. On January 2nd, 1953, the Court entered a finding of guilty as charged, from which finding appeal is made to this Court.

## THE ISSUES

This appeal is strictly limited to questions of law. We have the task of examining the record to determine whether there be merit in any of the assigned errors. We do not consider that we should search for errors other than those duly designated and assigned by counsel. The assigned errors are as follows:

"1. The Court erred in overruling defendant's motion for a directed verdict made at the conclusion of the State's case.

"2. The verdict is not supported by the evidence, is contrary to the manifest weight of the evidence and is contrary to law.

"3. The Court erred in excluding evidence offered by defendant and in admitting evidence offered by the State over defendant's objections, to all of which defendant excepted.

"4. The Court erred in overruling defendant's motion for a new trial."

## THE LAW STATED

This case does not present any new, unusual or novel questions of law. Like situations have confronted our courts since schools have existed. Every text book of law contains clear and understandable statements that have application here. Nearly every State has its leading cases on the subject of corporal punishment of a pupil by a teacher. Ohio is no exception.

When a teacher gives a pupil corporal punishment and is

charged criminally therefor, certain fundamental propositions of law come to mind.

First, the teacher stands in loco parentis (i. e., in the place of a parent), and acts in a quasi judicial capacity and is not liable for an error in judgment in the matter of punishment.

Second, the teacher's responsibility attaches home to home (i. e., while the pupil is on the way to and from school).

Third, there is a presumption of correctness of the teacher's actions.

Fourth, there is a presumption that the teacher acts in good faith.

Fifth, mere, excessive or severe punishment on the part of the teacher does not constitute a crime unless it is of such a nature as to produce or threaten lasting or permanent injury, or unless the State has shown that it was administered with either express malice, (i. e., spite, hatred or revenge), or implied malice, (i. e., a wrongful act wantonly done without just cause or excuse), and beyond a reasonable doubt.

Sixth, the defendant teacher is entitled to all the benefits and safeguards of the well-known presumption of innocence.

In our perusal of the authorities, we have examined some fifty or sixty cases, and the best expression of the law which we here deem applicable in this case is found in the rule stated by the Supreme Court of Alabama, 39 Southern 569, as follows:

"One standing in loco parentis, exercising the parents' delegated authority, may administer reasonable chastisement to a child or pupil to the same extent as the parent himself; and to fasten upon him the guilt of criminality he must **not only** inflict on the child immoderate chastisement, but he must do so **malo animo,** with legal malice or wicked motive, or else he must inflict on him some permanent injury."

This rule is practically adopted by the Supreme and Appellate Courts of leading States throughout the country, particularly, Massachusetts, New York, Illinois and Alabama.

Vanvactor v. State, 113 Ind. 276, 15 N. E., 341; State v. Mizner, 50 Iowa 145, 32 Am. Rep. 128; State v. Pendergrass, 12 N. C 365, 31 Am. Dec. 416; Patterson v. Nutter, 78 Me. 509, 7 Atl. 273; Anderson v. State, 3 Head (Tenn.) 455; 75 Am. Dec. 774; Lander v. Seaver, 32 Vt. 114, 76 Am. Dec. 156; Commonwealth v. Randall, 4 Grey (Mass.) 36; Commonwealth v. Seed, 5 Clark (Penn.) 78; Dowler v. State, 14 Tex. Crim. App. 61, 4 Am. Crim. Rep. 49; People v. Mummert, 40 N. Y. S. (2d) 699.

In the Mummert case, last cited, at Page 702, the New York Court states its view of the proper rule, as follows:

"In determining what is a reasonable punishment the defendant must necessarily have regarded various considerations, and whether after such consideration he exercised reasonable

judgment in determining what the punishment should be is often a difficult question. Among reasonable persons difference prevails as to the circumstances which will justify corporal punishment and the extent to which such punishment may properly be administered. Because of that difficulty and the advantage which a teacher or principal has by being present at the school and having before him the circumstances, a considerable allowance should be made to him by way of protecting him in the exercise of his discretion, **particularly where it does not appear that he acted from malice or anger.** Lander v. Seaver, 32 Vt. 114, 76 Am. Dec. 156; cited in People v. Petrie, 120 Misc. 221, 198 N. Y. S. 81. It may not be said upon this record that the People established beyond a reasonable doubt either that the defendant acted from anger or malice or that he was unreasonable in determining that corporeal punishment should be inflicted." (Emphasis added.)

In our research, we find no better or clearer statement of what we deem to be the applicable law of Ohio than that found in **O. Jur., Volume 36, Paragraph 349,** at **Page 357.**

"349. CRIMINAL LIABILITY OF TEACHER.—

"Moderate and reasonable correction by a schoolmaster with a proper instrument is not a criminal offense. But if a teacher, in administering correction or punishment to pupils, uses his authority as a cover for malice, he is amenable to the criminal laws; and the same result follows if the teacher is actuated by revenge, spite, or evil passion. On the question of liability for excessive punishment administered under an error in judgment, however, the authorities are divided. One line of authorities holds that the punishment should be proportioned to the offense and that the teacher is criminally liable for excessive and immoderate punishment, regardless of his motives and all questions of malice. The other line of decisions holds that the teacher acts in a quasi judicial capacity and is not liable for an error of judgment in the matter of punishment, even though it is unnecessarily excessive, if it is not of such a nature as to cause or threaten lasting injury and is not actuated by malice. The Courts of Ohio adhere to the latter rule, or a modification thereof, to the effect that mere immoderate and excessive punishment does not constitute a crime unless it is of such a nature as to produce or threaten lasting or permanent injury and is accompanied by express or implied malice."

Three Ohio cases have come under our careful scrutiny; namely, the Mohr case, (19 O. C. C., N. S., 43); Martin case, (11 O. N. P., N. S., 183); and the **Liggett case, (84 Oh Ap 225).**

In the Mohr case (1908, Summit County Circuit Court), a

father was charged with unlawful punishment of his seven year old daughter. This case holds in effect that the parent is criminally liable for excessive or immoderate punishment, regardless of a parent's motives and all questions of malice. It did not go to the Supreme Court.

In the Martin case (1910, Common Pleas Court of Muskingum County), a teacher was criminally charged with cruel punishment of a pupil, a boy of twelve years. It holds in effect that the teacher is not criminally liable for mere, excessive or immoderate punishment, but that malice, express or implied, and production or threatened production of lasting or permanent injuries must be shown; and, beyond a reasonable doubt. This case did go to the Supreme Court of Ohio and was affirmed, without opinion. (87 Oh St 459)—(1912).

In the Liggett case (1947), a stepmother was charged with assault with intent to kill when she cruelly punished a nine year old stepson. The case holds, "There was substantial evidence of these physical injuries, indicating punishment far in excess of that which the law authorizes one standing in loco parentis to inflict."

In our study of the three cases, we distinguish the Martin case from the Mohr and Liggett cases. The Martin case is a teacher-pupil case, whereas the Mohr case is a father-daughter case, and the Liggett case is a stepmother-stepson case.

We note that in the Mohr case, the Circuit Court of Summit County did recognize, "that the father is the judge of when he shall punish and for what" and the Court did further recognize the requirement of malice but stated that an instruction to the jury that they must find that, "defendant was prompted by malice and ill-will towards his minor daughter Edith Mohr in inflicting the punishment in question," would have been improper since the severe punishment might have been inflicted "because of ill-will that he had towards the parent's mother, sister or brother."

Parenthetically, we say that it is not too unusual for a parent or step-parent to bear ill-will towards another member of the family, and not having an opportunity to vent their spleen upon him to "take their spite out on" some other innocent family member. Nevertheless, the ill-will or malice is still present in the mind and heart of the punisher. Such a situation does not exist in our school rooms, and a school teacher rarely punishes one pupil for the misdeeds of another. The quasi judicial capacity of the school teacher punisher is therefore more impersonal and more impartial than that of a parent or step-parent punisher.

We, therefore, make the definite distinction between the

Martin case which was a teacher-pupil case on the one hand, and the Mohr and Liggett cases which were parent or step-parent punisher cases.

The Mohr and Liggett cases hold that the corporeal punishment, in a parent or step-parent punisher case, can be so severe, so excessive and so cruel as to be "shocking to every right thinking man." (Mohr case, Page 45). It then becomes "punishment far in excess of what the law authorizes one standing in loco parentis to inflict," (Liggett case, Page 226), and malice is implied and the defendant cannot under any circumstances be excused.

In our opinion, the rule announced in the Martin case is the law of Ohio. It is the only teacher-pupil case authentically reported. It adopts what we consider to be the majority view of other jurisdictions. It was the only one of the three cases above digested which was affirmed by the Supreme Court of Ohio. We note also that the factual situation surrounding the Muskingum County case is very analogous to that of the case at Bar. We quote the very pertinent language of the court in the Martin case at Page 187.

"So far as my knowledge goes, the courts of Ohio have adhered to the latter rule, or at any rate to a modified rule, viz., that the state must show that the punishment was immoderate and excessive and that express malice (i. e., spite, hatred or revenge) or implied malice (i. e., a wrongful act wantonly done without just cause or excuse) must appear; that mere excessive punishment on the part of the teacher does not constitute a crime unless it is of such a nature as to produce or threaten lasting or permanent injury; that malice, either express or implied, must be shown, and beyond a reasonable doubt."

As to the presumption of innocence, the General Code expressly stipulates that the defendant in a criminal case is presumed to be innocent until he is proven guilty of the crime charged; and, beyond a reasonable doubt. This fundamental rule has been reiterated many times in the decisions of our courts. The trial court was bound to respect this presumption. Its effect is to require the Court to infer and take for granted that the defendant is not guilty. The presumption of innocence is not an idle one, but is a substantial right inuring to the benefit of the accused in every criminal case upon every material fact necessary to constitute guilt.

In an early Ohio case in 1833, (Wright, 392), the Court charged the jury as follows:

"You will hold the prisoner innocent of every particular of the charge against him, until his guilt be made manifest in

the testimony, and if the acts proven be without assignable motives, in proportion as they depart from probability in the same proportion, the presumption of his innocence increases: because men are not readily presumed to do unusual, extraordinary, or cruel acts, without motives . . ."

## THE LAW APPLIED TO THE FACTS

The trial court did not apply the rule of the Martin case. Very early in the record (Page 58), the trial court stated that he considered the rule in the Martin case to be "in conflict with the expressed provisions of the Constitution of the United States and the State of Ohio." We have minutely examined these constitutions and cannot understand what the trial court had in mind when he made such a remark, nor does the brief of the City Solicitor's Office supporting this conviction cite any authority or reason for such a statement.

Furthermore, the trial court in its written opinion and finding (Page 2) said, "The evidence does not disclose any express malice or ill-will on the part of the defendant."

The trial court did attempt to apply the rule of the Mohr and Liggett cases. We find on Page 6 of his written opinion and finding these words, "This evidence as well as the remainder of the evidence in this case shocks the sensibilities of this Court as this Court believes it would shock the sensibilities of the average individual under these circumstances, regardless of whether or not he is a disciplinarian of the old school."

Proper application of the rule in the Mohr and Liggett cases prompts us to ask the question,—"Was the punishment in the case at Bar so severe, so excessive and so cruel as to be shocking to every right thinking man?" If so, then it was "punishment far in excess of what the law authorizes one standing in loco parentis to inflict," and malice will be implied.

This Court has examined the photographic exhibit of the boy's buttocks, and has carefully perused the record as to all bits of evidence concerning the severity of this paddling, and after weighing the evidence we find nothing that shocks the sensibilities of this Court or points to any fact of excessive severity or cruelty. School day memories of the average individual, including this Court, will recall many experiences of corporeal punishment more severe than this one properly given and of great benefit to the pupil and the school.

This corporeal punishment came to the attention of a number of individuals without shocking their sensibilities.

First of all, the boy's room teacher watched the paddling; it did not shock her.

Second, it is in evidence (Page 44) that this whole matter came to the attention of the Superintendent of Schools who

"seen the bruises on Sam" without having his sensibilities shocked into action, although he had ample authority under the law to discipline or remove the teacher.

Third, the record discloses on the same page (44), "We seen Chlebeck, we had a talk with him about it." The authorities of the County Juvenile Court, at least, unofficially, had this entire matter before them without the shocking of sensibilities there, although they too had ample authority under the law to do something about it. The sensibilities of the school doctor and the school nurse were not shocked.

Next, what does the record show as to any production or threatened production of lasting or permanent injuries. The boy was examined by his family physician on the day following the paddling, and the record discloses that the doctor found the vivid discoloring of the boy's buttocks, black and blue, but nowhere does the record disclose that the injuries were such as to require any medical treatment. This boy had been an epileptic since infancy, and his mother did testify that after the paddling he had three such fits, but the record discloses no medical testimony indicating any causal connection between the paddling and the subsequent seizures, the only medical testimony thereon being the family doctor's statement (Record, Page 53), on December 18th, "To my knowledge he has been free from seizures this past year."

How then can it be said that there was any substantial evidence of either physical injuries or cruelty, indicating punishment in excess of that which the law authorizes one standing in loco parentis to inflict.

When the trial court called this punishment immoderate and excessive, the State's evidence was certainly given the benefit of most favorable interpretation. The defendant, and not the State, is entitled to such benefit when the law as to the presumption of innocence is properly applied.

The verdict and finding of the trial court is contrary to the law of the Martin case.

The verdict and finding of the trial court is contrary to the manifest weight of the evidence as to severity, cruelty and injury and, therefore, contrary to the rule of the Mohr and Liggett cases. The verdict of the trial court is not supported by the evidence, whichever rule is applied.

We, therefore, attend the assignments of error in reverse order.

We find no merit in numbers 4 and 3.

We find that there is merit in number 2, and further find that the verdict is not supported by the evidence, is contrary to the manifest weight of the evidence and is contrary to law.

We find also that there is merit in assigned error number

1 and that the trial court should have directed a verdict for the defendant at the conclusion of the State's case. Proper application of the rule of the Martin case and the rule of the Mohr and Liggett cases required the trial court to examine the State's evidence for a substantial showing of bad faith or malice or glaring injury.

This record discloses no evidence which would indicate that this teacher was actuated by any malice, express or implied, or of any serious physical injury or of any punishment in excess of that which the law authorizes one standing in loco parentis to inflict. Contrarily, there is ample evidence to indicate that this teacher acted in good faith with proper motives.

Since we are of the opinion that the trial court should have directed a verdict for the defendant at the conclusion of the State's evidence, this Court will enter such an order at this time and acquit the defendant.

Defendant prepare entry.