Leatha Benita SIMS, by her next friend
and mother, Linda Gail Sims,
Plaintiff,

v.

William WALN and Max Launder,
Defendants.

Civ. No. 4526.

United States District Court,
S. D. Ohio, W. D.

Dec. 16, 1974.

---

Clyde R. Ellis, Michael E. Geltner, American Civ. Liberties of Ohio, Inc., Columbus, Ohio, for plaintiff.

William H. Thornburg, Dayton, Ohio, Alfred J. Weisbrod (trial counsel), Dayton Ohio, Robert T. Baker and John C. Burkholder, Columbus Ohio, for defendants.

William J. Brown, Atty. Gen. of Ohio, Michael R. Grove, Asst. Atty. Gen. of Ohio, Columbus, Ohio, amicus curiae, for Martin Essex, Superintendant of Public Instruction for the State of Ohio.

## FINDINGS OF FACT, OPINION AND CONCLUSIONS OF LAW

RUBIN, District Judge.

This matter is before the Court following trial, presentation of evidence and testimony and a post trial memorandum. Plaintiff seeks damages, both compensatory and punitive, an injunction against defendants from discriminating against plaintiff or other black persons in the infliction of corporal punishment, and a declaratory judgment holding § 3319.41 Ohio Rev.Code to be unconstitutional.

In accordance with Rule 52 of the Federal Rules of Civil Procedure, the Court does herewith submit its Findings of Fact and Conclusions of Law.

## I

## FINDINGS OF FACT

1.

Plaintiff, Leatha Benita Sims, is a minor age 15. In May of 1973 she was a student at Schaeffer Junior High School, Springfield, Ohio.

2.

Among the disciplinary punishments used at Schaeffer Junior High School are "detention" and "corporal punishment." When punished by detention a student remains after school for a period of forty-five minutes. Corporal punishment is administered by a teacher or by the principal by use of a paddle, supplied by the Springfield Board of Education, on the buttocks of the student being disciplined. The maximum number of blows with the paddle, referred to at Schaeffer Junior High School as "cracks", never exceeds three. Corporal punishment may be administered by the principal of a school in accordance with § 3319.41, Ohio Rev.Code.[1]

3.

On May 14, 1973, plaintiff Sims had been punished by imposition of a detention. She appeared at the office of the principal seeking to be relieved from detention and asserting that she was required to babysit. No note or previous information had been supplied to the school authorities and plaintiff Sims was required to make a telephone call to verify her obligation. She was unable to reach her mother for verification and was thereupon offered a choice by defendant Waln of detention or "two cracks." Plaintiff Sims declined to do either and fled from the principal's office. Contact was made between plaintiff and defendant Waln resulting in

---

1. In May of 1973 the pertinent portion of Ohio Rev.Code § 3319.41 was:

A person employed or engaged as a teacher, principal, or administrator in a school, whether public or private, may inflict or cause to be inflicted, reasonable corporal punishment upon a pupil attending such school whenever such punishment is reasonably necessary in order to preserve discipline while such pupil is subject to school authority.

plaintiff slipping to the floor and sustaining an injury to her knee.. No "cracks" were administered by defendant Waln.

**4.**

Defendant Max Launder, Assistant Principal, had been requested by defendant Waln to serve as a witness. Other than observe the incident, defendant Launder did not participate. No evidence has been presented that he touched the person of the plaintiff or that he gave her any instructions.

**5.**

A record of disciplinary action involving students at Schaeffer Junior High School is maintained in the office of the principal. During the school year 1972–73, plaintiff Sims was disciplined on forty occasions. On April 12, 1973, two "cracks" were inflicted after consultation with plaintiff's mother. During the school year 1973–74, plaintiff was disciplined thirty-six times without the administration of any "cracks." No conclusive probative evidence has been presented indicating that corporal punishment is administered in a discriminatory fashion, either by reason of sex or by reason of race.

**II**

**OPINION**

This Court is met by a threshold question raised by the United States Court of Appeals for the Sixth Circuit in the case of R. Brooks Bates v. Leslie Dause and Robert Garner, 502 F.2d 865 (1974). In the *Dause* case the Court considered a § 1983 claim as it related to demotion and transfer of principals of two elementary schools. Plaintiffs had asserted a deprivation of rights to support an action under § 1983 and pendent jurisdiction under the Kentucky Teachers Tenure Act. *Dause* teaches before a Federal Court can grant relief to a plaintiff, it must first determine that the federal claims have substance sufficient to confer subject matter jurisdiction on the court. United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S. Ct. 1130, 16 L.Ed.2d 218 (1966); Price v. United Mine Workers of America 336 F.2d 771 (6th Cir. 1964); Patrum v. Greensburg, 419 F.2d 1300 (6th Cir. 1969), cert. den., 397 U.S. 990, 90 S.Ct. 1125, 25 L.Ed.2d 398 (1970).

The question of whether a claim has sufficient substance, or, in other words, whether it presents a "substantial question" that will confer subject matter jurisdiction on a federal court was recently discussed at length by the Supreme Court in Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 1378, 39 L.Ed.2d 577 (1973). The Court said, per the majority opinion of Mr. Justice White[2] that:

> The principle applied by the Court of Appeals—that a "substantial" question was necessary to support jurisdiction —was unexceptionable under prior cases. Over the years this Court has repeatedly held that the federal courts are without power to entertain claims otherwise within their jurisdiction if they are "so attenuated and unsubstantial as to be absolutely devoid of merit," Newburyport Water Co. v. Newburyport, 193 U.S. 561, 579 [24 S.Ct. 553, 557, 48 L.Ed. 795] (1904); "wholly insubstantial," Bailey v. Patterson, 369 U.S. 31, 33 [82 S.Ct. 549, 550–551, 7 L.Ed.2d 512] (1962); "obviously frivolous," Hannis Distilling Co. v. Baltimore, 216 U.S. 285, 288 [30 S.Ct. 326, 327, 54 L.Ed. 482] (1910); "plainly unsubstantial," Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 105 [53 S.Ct. 549, 550, 77 L.Ed. 1062] (1933); or "no longer open to discussion," McGilvra v. Ross, 215 U.S. 70, 80 [30 S.Ct. 27, 31, 54 L. Ed. 95] (1909). One of the principal decisions on the subject, Ex Parte Poresky, 290 U.S. 30, 31–32 [54 S.Ct.

---

2. Mr. Justice Powell, with whom the Chief Justice and Mr. Justice Rehnquist joined, wrote a dissenting opinion; and Mr. Justice Rehnquist, with whom the Chief Justice and Mr. Justice Powell joined, also wrote a dissenting opinion.

3, 4–5, 78 L.Ed. 152] (1933), held, first that "[i]n the absence of diversity of citizenship, it is essential to jurisdiction that a substantial federal question should be presented"; second, that a three-judge court was not necessary to pass upon this initial question of jurisdiction; and third, that "[t]he question may be plainly unsubstantial, either because it is 'obviously without merit' or because 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy.' Levering & Garrigues Co. v. Morrin, *supra*; Hannis Distilling Co. v. Baltimore, 216 U. S. 285, 288 [30 S.Ct. 326, 54 L.Ed. 482]; McGilvra v. Ross, 215 U.S. 70, 80 [30 S.Ct. 27, 54 L.Ed. 95]."

Only recently this Court again reviewed this general question where it arose in the context of convening a three-judge court under 28 U.S.C. § 2281:

> " 'Constitutional insubstantiality' for this purpose has been equated with such concepts as 'essentially fictitious,' Bailey v. Patterson, 369 U.S., at 33 [82 S.Ct. 549, at 551], 'wholly insubstantial,' *ibid.;* 'obviously frivolous,' Hannis Distilling Co. v. Baltimore, 216 U.S. 285, 288 [30 S.Ct. 326, 327, 54 L.Ed. 482] (1910); and 'obviously without merit,' Ex Parte Poresky, 290 U.S. 30, 32 [54 S.Ct. 3, 4–5, 78 L.Ed. 152] (1933). The limiting words 'wholly' and 'obviously' have cogent legal significance. In the context of the effect of prior decisions upon the substantiality of constitutional claims, those words import that claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial for the purposes of 28 U.S.C. § 2281. A claim is insub-

stantial only if ' "its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." ' Ex Parte Poresky, *supra,* at 32 [54 S.Ct. 3, at 4], quoting from Hannis Distilling Co. v. Baltimore, *supra* [216 U.S.], at 288 [30 S.Ct. 326, at 327]; see also Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 105–106, [53 S.Ct. 549, 550, 77 L.Ed. 1062] (1933); McGilvra v. Ross, 215 U.S. 70, 80 [30 S.Ct. 27, 31, 54 L.Ed. 95] (1909)." Goosby v. Osser, 409 U.S. 512, 518 [93 S.Ct. 854, 858–859, 35 L.Ed.2d 36] (1973).

The substantiality doctrine as a statement of jurisdictional principles affecting the power of a federal court to adjudicate constitutional claims has been questioned, Bell v. Hood, 327 U.S. 678, 683 [66 S.Ct. 773, 776, 90 L.Ed. 939] (1946), and characterized as "more ancient than analytically sound," Rosado v. Wyman, *supra,* [397 U.S. 397], at 404, [90 S.Ct. 1207, at 1214, 25 L.Ed.2d 442]. But it remains the federal rule and needs no reexamination here, . . ." Hagans v. Lavine, *supra,* at 536–538, 94 S.Ct. at 1379.

To fully evaluate the substantiality of the federal claims we shall first consider the broad general principles of applicable law; secondly, the relevant law in the State of Ohio; and thirdly, the relevant federal case law.

■ First, a review of the general legal principles applicable to corporal punishment indicates clearly and conclusively that such is generally permissible.

A teacher is responsible for the discipline in his school, and for the progress, conduct, and deportment of his pupils. It is his duty to maintain good order and to require of his pupils a faithful performance of their duties. To enable him to discharge such a duty effectually, he must have

the power to enforce prompt obedience to his lawful commands. For this reason in proper cases, he may inflict corporal punishment on refractory pupils.

In some jurisdictions the authority of teachers to administer corporal punishment is regulated by statute or by school board regulations. School boards and administrators have the power to promulgate and to enforce reasonable regulations governing students in attendance with the power to impose responsible nondiscriminatory corporal punishment for breaches thereof, without violating any federally protected constitutional rights of pupils. 68 Am.Jur.2d 585, 586, Schools § 258, Corporal Punishment.

It is a well established principle of the law of torts that corporal punishment which is reasonable in degree, and which is administered by a teacher to a pupil as a disciplinary measure is "privileged" in the sense that the administration of such punishment does not give rise to a cause of action for damages against the teacher.[3] 43 ALR 2d 469 (II § 3(a)) *Teachers civil liability for administering corporal punishment to pupil.*

One other than a parent who has been given by law or has voluntarily assumed in whole or in part the function of controlling, training, or educating a child, is privileged to apply such reasonable force or to impose such reasonable confinement as he reasonably believes to be necessary for its proper control, training, or education, except insofar as the parent has restricted the privilege of one to whom he has entrusted the child.[4] Restatement of Torts 2d § 147(2), Privilege to Discipline Children; General Principle.

One who is in charge of the education or training of a child as a public officer is privileged to inflict such reasonable punishments as are necessary for the child's proper education or training notwithstanding the parent's prohibitions or wishes.[5] Restatement of Torts 2d § 153(2), Power of Parent to Restrict Privilege.

As to children, the privilege remains, despite any modern theories, that to spare the rod is not to spoil the child. A parent, or one who stands in the place of a parent, may use reasonable force, including corporal punishment, for discipline and control; . . . The teachers authority extends to all offenses which directly and immediately affect the decorum and morale of the school . . .

---

3. Among the extensive citations of cases in support of this principle the following Ohio cases are cited and are on point: Guyton v. Rhodes, 65 Ohio App. 163 (1940), 29 N.E.2d 444 (rule supported by implication); Quinn v. Nolan, 7 Ohio Dec. Reprint 585, 4 W L Bull 81 (1897).

4. The official comments to § 147 indicate its thorough application to the instant action:
   f. The rule stated in this section applies to any person other than a parent who is exercising the parental function of controlling, training, and educating a child. It applies to persons to whom the law has given complete or partial charge of such matters. Thus, it includes . . . the teachers and other officials in a public school to which the parent is required to send his child for education.

5. The official comments to § 153 indicate its thorough application to the instant action:

   d. *Public schools.* This subsection applies not only where the parent is required to send his child to a public school, but also where, having the option to send the child to such a school or to a private school, he elects the former. It is also applicable where the parent, without obligation to do so, sends his child to a high school or State college or university. In such cases, the fact that the parent expresses a desire that the child should not be punished in a particular way or for a particular offense does not restrict the privilege of the school authorities. The will of the parent cannot defeat the policy of the State. The school authorities, therefore, have such disciplinary privilege as is reasonably necessary to secure the education of the child irrespective of the wishes of the parent. The same is true where the parent sends the child to a public school in preference to a private school as a matter of economy or choice.

The privilege of either parent or teacher extends to the infliction of any corporal punishment which is reasonable under the circumstances;. Prosser; The Law of Torts, 4th Edition, § 27, Defenses to Intentional Interferences with Person or Property; Discipline.

It is quite clear that corporal punishment of a pupil by a teacher does not, in and of itself, run counter to the general principles of accepted law. The case law in Ohio is equally clear on the subject:

> [I]t is agreed in Ohio that a schoolteacher may inflict corporal punishment to a reasonable extent [6] if he uses no more force than is necessary. A schoolteacher in effect stands *in loco parentis* and may administer reasonable chastisement to a pupil to the same extent as the pupil's parent.[7] 48 O.Jur.2d part 2, Schools § 177 Corporal Punishment.

In State v. Lutz, 65 Ohio L.Abs. 402, 113 N.E.2d 757, the Syllabus By the Court states that:

> 1. A school teacher stands in loco parentis and acts in a quasi judicial capacity and is not liable for an error in judgment in the matter of punishment of a pupil.
>
> 2. There is a presumption of correctness of the teacher's actions and that he acts in good faith.

The state of the law regarding corporal punishment in Ohio is such that it has caught the eye of the law review writers:

> Between the subjective and objective formulations, a middle ground has been recognized. Ohio for example, has adopted the *Prendergrass* rule

in teacher-pupil cases but not in parent-child situations. The reason offered for the distinction is that in the relatively objective teacher-pupil relationship the teacher acts in a quasi-judicial capacity which requires a maximum of discretion, and, therefore, should be given the benefit of a subjective (good faith) standard. The Legal Framework for Child Protection.[8]

Therefore, before even considering the state statute, it is evident that corporal punishment in Ohio is so unanimously supported by the legal authorities as to leave no room for the plaintiff to question its legal acceptability. That corporal punishment may be challenged on the grounds of unreasonableness, excessive force, permanent injury, improper administrator, improper receiver, improper method, and so on, is not questioned. But the basic question of whether or not it is permissible at all must be answered in the affirmative. And thus when one challenges a state statute authorizing corporal punishment one must look to other areas besides the generally accepted bodies of tort law or the laws and cases of the State of Ohio, for these indeed put the plaintiff's claim, on the facts presented, in the posture of lacking sufficient substance to confer jurisdiction on the Court.

Turning now to the federal law in this area, one is confronted with essentially two questions: one relating to the Fourteenth Amendment to the United States Constitution (and the statutes enacted under its § 5 enforcement provision); and the Eighth Amendment to the United States Constitution (the Cruel and Unusual Punishment clause).

> A teacher has the same right as a parent, in pursuance of the rules of the school known to the parents, to inflict reasonable corporal punishment upon a pupil deserving it. Quinn v. Nolan, 7 Ohio Dec. Reprint 585.

6. 48 O.Jur.2d, Schools § 177, footnote 17:
   Guyton v. Rhodes, 65 Ohio App. 163, 18 Ohio Op. 356, 31 Ohio L.Abs. 591, 29 N.E.2d 444 (supporting rule by implication); Quinn v. Nolan, 7 Ohio Dec. Reprint 585; Martin v. State, 11 Ohio N.P. (n.s.) 183, 21 aff'd by circuit court, aff'd 87 Ohio St. 459, 102 N.E. 1132; State v. Lutz (CP) 65 Ohio L.Abs. 402, 113 N.E.2d 757.

7. 40 O.Jur.2d, Schools § 177, footnote 19:
   State v. Lutz, (CP) 65 Ohio L.Abs. 402, 113 N.E.2d 757.

8. Monrad G. Paulsen: The Legal Framework for Child Protection; 66 Colum.L.Rev. 679, 688 (1966); see also, Norman D. Tripp; Acting "In Loco Parentis" as a Defense to Assault and Battery; 16 Clev-Mar.L.Rev. 39, 43 (1967).

Regarding the Fourteenth Amendment, the standard that consistently appears is the classic "reasonableness" standard. A most concise summary of the Supreme Court cases in this area is provided by Judge William M. Taylor, Jr. in Wares v. Estes, 328 F.Supp. 657 (N.D.Tex.1971):

> Under the doctrine of Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1922), the state cannot *unreasonably* interfere with the liberty of parents and guardians to direct the upbringing and education of children under their control.[9] *These parental rights are not beyond limitation.*[10] Prince v. Commonwealth of Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645, 652 (1943). In order for a deprivation of due process under the Fourteenth Amendment to occur, the rules and policies of the school district must bear *"no reasonable relation* to some purpose within the competency of the State."[11] Pierce v. Society of Sisters, 268 U.S. 510, 535, 45 S.Ct. 571, 573, 69 L.Ed. 1070, 1076 (1924). (emphasis added) Ware v. Estes, *supra*, 328 F.Supp. at 658–659.[12]

The federal case law thus does not question the permissibility, or constitutionality, of corporal punishment per se; the federal case law clearly permits corporal punishment, limiting it only by traditional "reasonableness" standards. The federal cases concerning corporal punishment in the Fourteenth Amendment context look to whether or not the punishment is "arbitrary, capricious, unreasonable, or wholly unrelated to the competency of the state in determining its educational policy." Ware v. Estes, *supra*, 328 F.Supp. at 659. See also: Sims v. Board of Education of Independent School District No. 22, 329 F.Supp. 678 (D.N.M.1971); Glasser v. Marietta, 351 F.Supp. 555 (W.D.Pa.1972).

■■ Where, as here, the plaintiff cannot even show that there was any corporal punishment inflicted at all,[13] the Fourteenth Amendment claim is so obviously without legal merit as to cause a failure of this Court's subject matter jurisdiction to that claim.

■ Regarding the Eighth Amendment claim there is an initial distinction that must be made between criminal penalties and civil penalties. This distinction must be made because the Eighth Amendment is not applicable in a civil context. Concerning the Cruel and Unusual Punishment clause of the Eighth Amendment the Supreme Court has stated that:

> The primary purpose of that clause has always been considered, and properly so, to be directed at the method

---

9. The Court's exact language in Meyer is as follows:

The problem for our determination is whether the statute as construed and applied unreasonably infringes the liberty guaranteed to the plaintiff in error by the Fourteenth Amendment. 262 U.S. at 399, 43 S.Ct. at 626.

10. The Court's exact language in Prince is as follows:

But the family itself is not beyond regulation in the public interest, as against a claim of religious liberty. (citations omitted) And neither rights of . . . parenthood are beyond limitation. Acting to guard the general interest in youth's well being, the state as *parens patriae* may restrict the parent's control by requiring school attendance, regulating or prohibiting the child's labor, and in many other ways. 321 U.S. at 166, 64 S.Ct. at 442.

11. The Court's exact language in Pierce is as follows: As often heretofore pointed out, rights guaranteed by the Constitution may not be abridged by legislation which has no reasonable relation to some purpose within the competency of the state.

12. In Ware v. Estes the Court found, as against a claim that corporal punishment violated Eighth and Fourteenth Amendment rights, that the plaintiff's claim was insubstantial.

13. The only time that the plaintiff was ever paddled was well before the incident in question, and was with the knowledge, and consent, of the plaintiff's mother. See *Finding of Fact No. 5*.

The contact between plaintiff Sims and defendant Waln in the incident in question was, as demonstrated by the evidence, not what any person familiar with the English language would bring within the definition of corporal punishment.

**549**

or kind of punishment imposed for the violation of *criminal* statutes . . . . (emphasis added) Powell v. Texas, 392 U.S. 514, 531–532, 88 S.Ct. 2145, 2154, 20 L.Ed.2d 1254 (1967). See also: Negrich v. Hohn, 246 F.Supp. 173 (W.D.Pa.1965):

> Not every physical hardship or restraint suffered in the course of governmental activity is to be regarded as punishment. Otherwise much military training in the armed services, and even the space program, would be proscribed. Punishment is a penalty inflicted by a judicial tribunal in accordance with the law in retribution for criminal conduct. Kennedy v. Mendoza-Martinez, 372 U.S. 144, 164–167, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); cf. United States v. Brown, 381 U.S. 437, 456–457, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965).

(emphasis added) Negrich v. Hohn, *supra*, at 176. Zwick v. Freeman, 373 F.2d 110 (2d Cir. 1967).

The instant action is one in a civil context, challenging the constitutionality of a civil statute administered in a civil setting. In the light of the clear federal law concerning the Eighth Amendment, any attempt to raise said Amendment here is so without merit as to lack sufficient substance to maintain subject matter jurisdiction in this court.

While the plaintiff's Amended Complaint alleges numerous causes of action and numerous claims against the defendants, the federal rights upon which these claims are based reduce down to the Eighth and Fourteenth Amendments, and it is the Court's holding that the plaintiff's claims under said Amendments are "constitutionally insubstantial" and "obviously without merit," prior decisions having inescapably rendered the instant claims frivolous. Hagans v. Lavine, quoted at length *supra*.

■ Besides the federal constitutional claims, the plaintiff has also alleged other causes of action. Pendant jurisdiction of this Court is available only in situations where there is sub-

stance to a federal claim. However, the conclusion reached by the United States Court of Appeals for the Sixth Circuit in the *Dause* case has pertinence to the matter at hand. The Court held there:

> Transfer of jurisdiction to federal courts cannot be accomplished by the procedural devise of filing an unsubstantial action under § 1983, coupled with a prayer for exercise of pendant jurisdiction. Bates v. Dause, *supra*, 502 F.2d at 867.

An examination of the evidence in this matter leads only to the conclusion that this is an insubstantial claim.

## III

### CONCLUSIONS OF LAW

#### A.

■ The United States District Court has jurisdiction to consider the administration of a state statute only where a substantial federal claim is asserted. Hagans v. Dause, *supra*.

#### B.

A student to whom corporal punishment had once been administered in accordance with Ohio Rev.Code § 3319.41 with consent of her parent and who is threatened with a second administration of such corporal punishment does not establish, without more, a violation of 42 U.S.C. § 1983.

#### C.

■ A black student in the posture of a student described in Conclusion of Law B. does not, without more, represent, for purposes of a class action, all other black students of Schaeffer Junior High School.

#### D.

In the absence of a substantial claim under 42 U.S.C. § 1983, this Court lacks jurisdiction and plaintiff's claim must therefore be dismissed.

Let judgment enter in accordance with the foregoing.