THE STATE OF OHIO, APPELLEE, *v.* HOOVER, APPELLANT. ▮

(No. OT-81-18—Decided March 12, 1982.)

*Mr. Mark J. Navarre,* for appellee.

*Mr. Gene W. Graves,* for appellant.

WILEY, J. After trial to the court, a jury trial having been waived, the defendant-appellant was found guilty of assault in violation of R.C. 2903.13, was sentenced to forty-five days in jail, with all but ten days suspended, and fined $1,000 and ordered to pay costs. Timely appeal was filed.

At the time of the alleged offense herein, Melvin Hoover, the defendant-appellant (hereinafter referred to as "appellant"), was the assistant superintendent in the Benton-Carroll-Salem School District, Oak Harbor, Ohio. Appellant had been employed in this school district for a period of twenty-one years as a teacher, assistant principal, and as an assistant superintendent. As a part of his duties as an assistant superintendent, appellant had charge of the bus routes of the school district.

On the morning of March 9, the appellant took certain disciplinary action against a student by the name of Dane Gorton at Carroll School, a point at which students transferred from one bus to another. As appellant was walking by a doorway of the Carroll School, he heard someone shout, "Hey Melvie." Appellant approached the Gorton boy, grabbed him by the lapel area of his sweatshirt, forcibly took him into the school, down the hallway and into a vacant artroom where he administered a substantial shaking, together with verbal admonishments.

There is conflict of testimony as to the extent of the physical contact between the appellant and the Gorton boy; however, the injuries inflicted were undisputably of such a character that the Gorton boy lost no time at school. He attended classes the day of the incident and returned to school the next day. There is conflict in the testimony as to certain injuries sustained to the Gorton boy's eye by reason of his coming into contact with the doorway into the artroom. Some testimony was adduced that the Gorton boy had been involved in an incident in the afternoon with another boy which could have resulted in some eye injury. The record also indicates that the Gorton boy was called to the office of the superintendent the following day in regard to this latter incident, at which time the superintendent observed

no apparent injury to the Gorton boy's face, particularly in the eye area.

The record further discloses that the disciplinary incident took only a few minutes and the Gorton boy was able to board the bus which he had originally intended to board. At the end of the disciplinary activity, as the Gorton boy and the appellant were leaving the artroom or going down the corridor from the artroom to the exit, the appellant either kicked at or gave the Gorton boy a "boot" with the side of his foot. In this regard, the record indicates that the Gorton boy was not even aware that he had received such a "boot." The record reveals the following as to the Gorton boy's testimony:

"[DIRECT EXAMINATION]

"Q. All right. Was there any other physical contact between you and Mr. Hoover and yourself that time, besides what you told us so far?

"A. Not that I can remember. Just shoving and shaking me and throwing me up into the blackboard.

"Q. Okay.

"A. And kicking, as I was going out of the one door, he kicked at me.

"Q. When was that?

"A. As we were going — I think it was — as we were going toward the exit, I think.

"Q. After you left the art room?

"A. Yes.

"Q. What did he do?

"A. Kicked at me.

"Q. With his foot?

"A. Yeah.

"Q. Where did he hit you, if he did?

"A. Back of the leg somewhere, just barely hit me as I was walking."

"[CROSS EXAMINATION]

"Q. When did he kick you?

"A. When he let go, after he let go. I felt something go towards my leg, back of my legs and —

"Q. He was behind you at this time?

"A. Yes.

"Q. Did you see him kick you?

"A. No, but I felt him. I mean, I wasn't looking behind me, I was looking in front of me and someone said that he kicked me, yes.

"Q. Was it the thigh, you say?

"A. Yes.

"Q. Where on you [sic] thigh?

"A. About, right about here. (Indicating)."

The record further indicates on cross examination:

"Q. When is the first time you consulted with a doctor regarding your injury?

"A. I can't remember; it was about a week after or two or three weeks after because I was going in to get my physical for sports, for track.

"Q. You didn't consult a doctor as a result of your condition after this incident?

"A. No. I just went to —"

The Gorton boy testified on direct examination and was cross-examined to some extent in regard to what happened in the artroom. Gorton indicated that he had been put up against a chalk board. On re-direct examination, the record indicates the following:

"Q. Okay. And then in the art room when he put you up against the chalk board, what part of your body hit the chalk board.

"A. My back.

"Q. What part on your back; your lower back?

"A. My whole back.

"Q. All right, did your head hit the blackboard at all at that time?

"A. Not that I can remember. Maybe it just hit lightly but I mean I didn't really swing and hit it hard.

"Q. Do you remember, as a result of this entire incident, your head hitting any hard object other than the time you hit the door?

"A. My head hitting hard, maybe a little bit hit just touching it, but not hitting it hard.

"Q. The corner of the door is a right angle and it's made out of wood; is it not?

"A. Yes.

"Q. It's hard?

"A. Yes.

"Q. It hurt when you hit?

"A. Yes.

"Q. Do you know if the side of your head was bruised at all?

"A. Yes; it was a black eye all around there.

"Q. Did it swell up that night?

"A. Yes.

"Q. How tall are you Dane?

"A. I'm about five foot nine.

"Q. Do you know how much you weigh?

"A. About a hundred and twenty.

"Q. How was your coat ripped?

"A. The pockets, well it has pockets along there.

"Q. When did that happen? Do you remember when that happened?

"A. I don't know, as he was shaking me it ripped.

"Q. All right. Do you recall anything that — whether or not Mr. Sievert or Mrs. Biro said anything to you or to Mr. Hoover during this?

"A. I don't think they said anything to me. I'm almost positive they didn't.

"Q. The next day when you woke up your eye was swollen and you had a little bit of black —

"A. Yes, it was red.

"Q. Any other — did you feel nauseated or anything?

"A. No, sir.

"Q. Did that last through the entire next day or did that disappear?

"A. Well, my back started to feel better but I still had the red, sore eye.

"Q. Okay, and that lasted for how long?

"A. Just a couple of days and then it went away."

Additional testimony was given on behalf of the state by Mrs. Robert Gorton, the mother of Dane Gorton.

On behalf of the appellant, additional testimony was given by Nancy Biro, principal of Carroll School, Richard Sievert, teacher at Carroll School, Richard Thorbahn, principal of the junior high school, and Melvin Wittman, custodian at Carroll School.

The appellant sets forth four assignments of error, the first of which states:

"1. The trial court erred in denying the defendant's motion for acquittal made at the end of the state's case:

"(a) The state failed to produce evidence sufficient enough to sustain a conviction and

"(b) The trial court imposed upon the defendant an affirmative defense, contrary to the laws of the state of Ohio."

As to division (a), *supra,* this assignment of error must be found not well-taken for the reason that pursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. See *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261 [9 O.O.3d 401]. At page 263 of *Bridgeman, supra,* the court stated:

"The federal counterpart of Crim. R. 29(A) is Fed. R. Crim. P. 29. An issue will be presented to the jury, under the federal rule, if the evidence, viewed in the light most favorable to the government, is such that 'a reasonable mind *might* fairly find guilt beyond a reasonable doubt,' and an issue will not be presented to the jury only if the evidence is such that 'there *must* be some doubt [as to guilt] in a reasonable mind * * *.' (Emphasis added.) See *United States* v. *Collon* (C.A. 6, 1970), 426 F. 2d 939, 942, and the cases cited therein."

Upon the evidence adduced herein, a reasonable mind might fairly find guilt beyond a reasonable doubt.

Division (b), *supra,* will be considered together with Assignment of Error No. 2, which states:

"2. The trial court erred in applying the standard of reasonable corporal punishment which a teacher may inflict upon a student for disciplinary purposes, by failing to apply the longstanding standard of *State* v. *Lutz* and the codification thereof set forth in Section 2919.22 Ohio Revised Code."

The issue raised by Assignments of Error No. 1(b) and No. 2 is what criteria should be used in determining whether corporal punishment administered upon a pupil attending school was reasonable and whether such punishment was reasonably necessary in order to preserve discipline. Addressing, first, the appellant's contention that the trial court imposed upon the defendant an affirmative defense, we find the following statement at page 6 of the trial court's well-written opinion:

"Now, at the conclusion of all of the evidence, the Court must consider whether (1) the State proved all the elements of Ohio Revised Code 2903.13, Assault, beyond a reasonable doubt, and (2) whether the defendant proved his Ohio Revised Code 3319.41 affirmative defense of 'reasonable corporal punishment * * * reasonably necessary in order to preserve discipline * * *' by a preponderance of the evidence."

R.C. 3319.41, enacted in 1965, provides, in part, as follows:

"A person employed or engaged as a teacher, principal, or administrator in a school, whether public or private, may inflict or cause to be inflicted, reasonable corporal punishment upon a pupil attending such school whenever such punishment is reasonably necessary in order to preserve such discipline while such pupil is subject to school authority."

The trial court erroneously held that, in order to establish the guilt of a teacher charged with a violation of R.C. 2903.13(A), only the statutory elements of assault set forth therein need be proven by the state. The trial court indicated that R.C. 3319.41 afforded only the basis of an affirmative defense to the assault charge.

We disagree. The trial court erred in determining that R.C. 3319.41 created an affirmative defense to be proven by the accused; on the contrary, we find the accused has no such burden. We determine that in order for the state to secure a conviction for a violation of R.C. 2903.13(A), it must prove not only the elements of assault contained therein but also must prove beyond a reasonable doubt that the corporal punishment inflicted upon the pupil was unreasonable and was not reasonably necessary to preserve discipline as set forth in R.C. 3319.41. Assignment of Error No. 1(b) is found well-taken.

As to Assignment of Error No. 2, the appellant cites the case of *State* v. *Lutz* (1953), 65 Ohio Law Abs. 402, a common pleas court decision, and the case of *Martin* v. *State* (1910), 11 N.P. (N.S.) 183, affirmed 87 Ohio St. 459. The appellant contends the following standards should be applied:

"Whether the punishment inflicted (1) was so severe or excessive and so cruel as to shock the sensibilities of the average individual, and (2) was administered with express or implied malice, and (3) resulted in substantial risk of serious physical harm. See *Lutz*, *Martin* and 2919.22(B) Ohio Revised Code."

On the other hand, the appellee contends that these standards are long outmoded and in the words of the trial judge:

"*Lutz* and *Martin*, and we find no other cases in Ohio directly on point, are not the law of Ohio, are aberrations, and do not control this case, especially in view of the adoption by the Ohio Legislature of Ohio Revised Code 3319.41 on July 17, 1970, and its predecessor statute effective October 30, 1965."

With the exception of the overly strong characterization of the cases of *Lutz* and *Martin* as being "aberrations," we concur with the trial court that *Lutz* and *Martin*, to the extent set forth in standards (1) and (2), *supra*, do not accurately state the law of Ohio in light of

the more recently enacted statutes, R.C. 3319.41 and 2919.22(B). On the other hand, we concur with the appellant that R.C. 2919.22(B) was not properly considered by the trial court in determining whether or not the punishment inflicted pursuant to R.C. 3319.41 was reasonable under the circumstances. R.C. 2919.22(B) states:

"(B) No person shall do any of the following to a child under eighteen or a mentally or physically handicapped child under twenty-one:

"(1) Torture or cruelly abuse the child;

"(2) Administer corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child."

"Substantial risk" is defined by R.C. 2901.01(H) as:

"* * * a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."

R.C. 2901.01(E) defines "serious physical harm to persons" to mean:

"(1) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

"(2) Any physical harm which carries a substantial risk of death;

"(3) Any physical harm which involves some permanent incapacity, whether partial or total, or which involves some temporary, substantial incapacity;

"(4) Any physical harm which involves some permanent disfigurement, or which involves some temporary, serious disfigurement;

"(5) Any physical harm which involves acute pain of such duration as to result in substantial suffering, or which involves any degree of prolonged or intractable pain."

In considering the application of the standards set forth in R.C. 2919.22(B), particular emphasis is placed upon the following words:

"Administer corporal punishment or other physical disciplinary measure * * * which punishment, discipline, * * * is excessive under the circumstances and creates a substantial risk of serious physical harm to the child."

This court commends the trial judge, Judge Paul Moon, in his well-prepared opinion, well-documented with cases not only from Ohio but also from many other jurisdictions. We concur with the statement of the trial court at page 6 of his opinion:

"At the outset of this aspect of the discussion let there be no misunderstanding on the concept of 'reasonable corporal punishment.' It exists now in Ohio as evidenced by Ohio Revised Code 3319.41, it existed prior to the adoption of that statute as evidenced by *Quinn* v. *Nolan, supra,* and it exists as part and parcel of the American concept of private and public education. This Court, speaking as both trier of fact and former pupil, has no quarrel with that timeless concept. Our language derives its term 'discipline' from the Latin *disciplina* meaning 'teaching, learning.' Webster defines 'discipline' as a subject which is taught, a field of study, *New Collegiate Dictionary,* 1980. Discipline and learning are inseparable, one cannot exist without the other."

We concur in the statement from *Quinn* v. *Nolan* (1879), 7 Dec. Rep. 585, set forth in the appellant's brief in order to support Assignment of Error No. 2, which states:

" 'From the time of Solomon to the present, parents have had the right, in a proper manner and to a proper degree, of inflicting corporal punishment on their children, and when the parent sends the child to a public school, the teacher has the same right while the child is under his or her charge.' " *Quinn* v. *Nolan, supra,* at 586.

In conclusion, we determine that the proper standards to be applied, in determining whether the corporal punishment permitted by R.C. 3319.41 is reasonable under the circumstances, is to consider those items set forth in R.C. 2919.22(B). Applying these standards, the extent and method of punishment to be inflicted is within the discretion of the teacher or the school official. Assignment of Error No. 2 is, therefore, found not well-taken as to the trial court's failing to apply the standards of *State* v. *Lutz, supra;* however, Assignment of Error No. 2 is well-taken in regard to the trial court's failing to apply the standards set forth in R.C. 2919.22. See Baker, Ohio School Law (1981), 393-394, Section 10.23.[1] See, also, *Ingraham* v. *Wright* (1977), 430 U.S. 651.

The third assignment of error alleges the trial court's decision is against the weight of the evidence. This assignment of error is well-taken. Furthermore, inasmuch as the trial court adopted the erroneous standard of requiring the defendant to establish an affirmative defense to the charge of assault, we determine that final judgment of acquittal should be, and hereby is, entered upon behalf of the defendant-appellant.

The fourth assignment of error is as follows:

"The trial court erred in its imposition of sentence upon the defendant as such sentence was a mistaken use of discretion."

In consideration of our disposition of Assignments of Error Nos. 2 and 3, we deem this assignment of error moot.

On consideration whereof, the court finds that the defendant was prejudiced and prevented from having a fair trial, and the judgment of the Port Clinton Municipal Court is reversed. The defendant-appellant is ordered discharged. Cause remanded to said court for assessment of costs against appellee.

*Judgment reversed.*

CONNORS, P.J., and BARBER, J., concur.

WILEY, J., retired, of the Sixth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.

---

[1] "Although the case law in Ohio relating to corporal punishment is surprisingly sparse, it appears that Ohio follows the general rule that a school teacher may not be held civilly liable for reasonable corporal punishment applied in good faith. Most discussions of corporal punishment have arisen in criminal cases and cases involving the dismissal of teachers for use of excessive corporal punishment. Nevertheless, it is possible to extract from these cases the general rule that a teacher in Ohio has a qualified privilege to inflict corporal punishment which is reasonable in light of all the circumstances, and which is not used as an excuse for personal vengeance. Such punishment does not constitute assault and battery, and is not 'cruel and unusual punishment' within the meaning of the eighth amendment to the United States Constitution. Nor does such punishment constitute a deprivation of 'life, liberty or property' so as to require a prior hearing.

"* * *

"Under this broad standard, and the 'reasonableness' standard created by the school discipline statute, it would appear that the extent and method of punishment to be inflicted is within the discretion of the teacher or school official."